UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

```
*******************************
THOMAS REILLY              *   CIVIL ACTION NO.
           PLAINTIFF       *      302CV1346
VS.                        *
CITY OF WEST HAVEN and H.  *   MARCH 25, 2004
RICHARD BORER, JR.
           DEFENDANT       *
*******************************
```

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P. 56(b), the defendants, City of West Haven (herein "the City") and H. Richard Borer, Jr. (herein "Mayor Borer"), move for summary judgment as to all counts of the Plaintiff's complaint, and in support thereof submit the following.

**I.   INTRODUCTION**

The Plaintiff is an employee of the City of West Haven. The Defendants are the City of West Haven and its Mayor, H. Richard Borer, Jr. Mayor Borer is named as a defendant both in his individual and in his official capacity.

From 1995 until July, 2002, the Plaintiff was employed as the electrical inspector for the City of West Haven. In July, 2002, the position of electrical inspector was eliminated from the operating budget of the City of West Haven and the Plaintiff exercised his rights as a member of the union to "bump" into the position of Property Maintenance Code Inspector. *Complaint ¶ 20.* The Plaintiff claims that the position of electrical inspector was eliminated from the budget for the City of West Haven for fiscal year 2002-2003 by Mayor Borer because the Plaintiff did not support Mayor Borer in his bid for reelection in November, 2001. The Plaintiff seeks redress pursuant to 42 U.S.C. § 1983 and Conn. Gen. Stat. § 31-51q for the alleged violation of his rights under the First and Fourteenth

Amendments to the United States Constitution and the Connecticut Constitution.

The City of is governed by a Mayor/City Council form of government. *Ex. 2, Charter, Ch. II § 2.* Pursuant to the Charter of the City of West Haven, the Mayor is responsible for recommending an annual operating budget to the City Council. *Id. at Ch. XIX, Part A § 3.* The City Council is responsible for reviewing the Mayor's recommendations, conducting at least one public hearing thereon and can alter any of the Mayor's recommendations by a two thirds majority vote. *Id. at Ch. XIX, Part A § 4.* City Council, and not the Mayor, is ultimately responsible for adopting the budget. *Id. Ex. 1, excerpts of Plaintiff's Deposition at pp. 121-122.*

Here, the Plaintiff makes no claim that the City Council committed any wrongdoing in adopting the operating budget for fiscal year 2002-2003. Indeed, the Plaintiff acknowledges that the City Council entertained a motion to restore the position of Electrical Inspector to the City's operating budget for fiscal year 2002-2003, but that the motion failed to carry by the necessary number of votes. *Complaint, ¶ 16. Ex. 1, excerpts of Plaintiff's Deposition at pp. 78-81.* Rather, the Plaintiff contends that the Mayor "is the person orchestrating the entire misdeed." *Exhibit 1, excerpts of Plaintiff's deposition, at p. 130.*

It is undisputed that it is the City Council and not the Mayor who adopts the operating budget for the City of West Haven. Accordingly, there is no question of material fact that Mayor Borer is not a final policymaker with respect to his duties in recommending a budget for the City of West Haven. Consequently, the Plaintiff's claims against the City and against the Mayor in his official capacity fail because the Mayor is not the final policymaker with respect to the budget for the City. In addition, the Plaintiff's claims against Mayor Borer in his individual capacity fail because the Mayor's actions in recommending an operating budget are protected by the doctrine of legislative immunity.

2

**II.    STANDARD OF LAW**

A motion for summary judgment is the appropriate vehicle "to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986). Motions for summary judgment are governed by Fed. R. Civ. P. 56. Where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law," summary judgment "shall" enter in favor of the movant. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)("[[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

In considering a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. Id. at 255; Matshushita Elec. Indus. Co. v. Zenith Radio Corp.., 475 U.S. 574, 587 (1986). However, the nonmoving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co. , 804 F. 2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987). Indeed, a showing of mere "metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. Matshushita, 475 U.S. at 586. Furthermore, where the movant demonstrates the absence of factual support for an essential element of the nonmovant's case, summary judgment is properly granted. Celotex, 477 U.S. at 323-24.

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN,CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

### III. ARGUMENT

#### A. SUMMARY JUDGMENT SHOULD ENTER IN FAVOR OF THE DEFENDANTS ON COUNTS TWO AND THREE OF THE COMPLAINT BECAUSE THERE IS NO QUESTION OF FACT THAT MAYOR BORER IS NOT A FINAL POLICYMAKER WITH RESPECT TO THE CITY'S BUDGET.

##### 1. The City of West Haven is entitled to summary judgment on Counts Two and Three of the Complaint because Mayor Borer does not possess final policymaking authority with respect to the City of West Haven's operating budget.

In Counts Two and Three of the Complaint, the Plaintiff claims that the City is liable for the alleged conduct of Mayor Borer regarding the budgetary process. The City, however, is not subject to liability because Mayor Borer is not a final policymaker with respect to budgetary decisions.

According to 42 U.S.C. § 1983,[1] a municipality may not be held liable under the doctrine of *respondeat superior* for acts of its employees that deprive a plaintiff of his or her constitutional rights. Jeffes v. Barnes, 208 F.3d 49, 56 (2d Cir. 2000). A municipality, however, may be subject to liability if the alleged constitutional deprivation was caused by a municipal "policy or custom." Anthony v. City of New York, 339 F.3d 129, 139 (2d Cir. 2003). To trigger municipal liability, the plaintiff must establish that the alleged deprivation resulted from the action of "a municipal decisionmaker, provided that the decisionmaker possesses final authority to establish municipal policy *with respect to the action ordered*." Legal Aid Soc'y v. City of New York, 114 F.Supp.2d 204, 231 (S.D.N.Y. 2000) (emphasis added) (quotation marks omitted).

The question for the Court is "whether [the] government official [is a] final policymaker [] for

---

[1] 42 U.S.C. § 1983 provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

4

the local government in a particular area, or on [the] particular issue." Jeffes, 208 F.3d at 57 (quotation marks omitted). "It does not suffice for these purposes that the official has been granted discretion in the performance of his duties. . . . [O]nly those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability." Id. (citation omitted) (quotation marks omitted).

"Whether the official in question possessed final policymaking authority is a legal question . . . . [T]he relevant legal materials, includ[e] state and local positive law, as well as custom or usage having the force of law. . . . The matter of whether the official is a final policymaker under state law is 'to be resolved by the trial judge *before* the case is submitted to the jury." Id. (citations omitted) (quotation marks omitted).

The Plaintiff alleges that Mayor Borer proposed in his recommended operating budget the elimination of the Plaintiff's position as "Electrical Inspector." *Complaint*. *¶ 12*. The Plaintiff further avers that "Mayor Borer's budget was adopted" and that, consequently, the Plaintiff's position as "Electrical Inspector" was eliminated. *Complaint*. *¶¶ 18-19*. The Plaintiff alleges that these acts were retaliatory in that the Plaintiff had campaigned for a seat on the City Council on the same ticket as John Picard, an opponent of Mayor Borer in the 2001 primary election. *Complaint*. *¶¶ 30, 33-34*. These alleged acts are the basis for the Plaintiff's claims against the City in Counts Two and Three of the Complaint pursuant to § 1983. These claims, however, even if supported by credible evidence, fail to substantiate a claim under § 1983 against the City.

In Legal Aid Society v. City of New York, 114 F.Supp.2d 204, 231 (S.D.N.Y. 2000), the District Court for the Southern District of New York rejected a plaintiff's attempt to impose municipal liability, premised in part upon alleged violations of the First Amendment, for certain actions taken by the Mayor of New York City regarding the city budget. Id. at 232. After reviewing the New York City Charter,

5

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O. BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

the Court concluded that the mayor was not the final policymaking authority with respect to the budget and, therefore, the municipality was not subject to liability under § 1983. Id. at 233. Because the mayor was not the final policymaker regarding the budget and because the plaintiff had failed to assert any wrongdoing on the part of the city council, the actual final policymaker for the city's budget, the Court held that municipal liability could not lie and granted summary judgment in favor of the city. Id.

In reaching this conclusion, the Court explained: "Because any budgetary proposals submitted by the Mayor are ultimately subject to plenary review by the City Council, the City Council possesses final policymaking authority with respect to the municipal . . . budget. [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies." Id. at 232 (quotation marks omitted). The Court also explained that "[t]he fact that the Mayor and the City Council may at times negotiate compromises on matters of budgetary policy does not affect this conclusion, since there is no contention, and indeed no evidence, that the City Council has adopted a custom or policy of acquiescence to the Mayor's budgetary demands." Id. at 232-33; *see also* City of St. Louis v. Praprotnik, 485 U.S. 112, 130, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (explaining that a subordinate official may be deemed as a policymaking authority if a superior official adopts the policy formulated by the lower-ranking official).

As in Legal Aid Society, the Plaintiff's claims here fail because Mayor Borer is not a final policymaker with respect to the operating budget of the City. Indeed, there is no dispute that it is City Council, not the Mayor, who is ultimately responsible for adopting an operating budget for the City of West Haven. The Plaintiff not only acknowledges that City Council is responsible for adopting a budget but also that City Council has the power to override any of the Mayor's budget recommendations by a two thirds vote. *Complaint, ¶¶ 16,18. Ex. 1, excerpts of Plaintiff's Deposition at pp. 121-122.* In

6

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O.BOX 1684 • NEW HAVEN,CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

fact, the Plaintiff's Complaint acknowledges that the City Council voted on a motion to override the Mayor's recommendation to eliminate the position of Electrical Inspector, but that there were insufficient votes for the motion to pass. *Complaint, ¶16; Ex. 1, excerpts of Plaintiff's Deposition at pp. 78-81.* The Charter for the City of West Haven confirms that the City Council, and not the Mayor, possesses final policymaking authority over the City's operating budget. WEST HAVEN, CONN., CITY CHARTER ch. XIX, pt. A, § 4 (1961, as revised). Because there is no claim nor any contention that City Council committed any wrongdoing, summary judgment is appropriately entered in favor of the City and the Mayor in his official capacity on Counts Two and Three of the Complaint.

Chapter XIX of the Charter sets forth the responsibilities of both the City Council and the Mayor as well as the Board of Finance with respect to the operating budget. Section 3 provides that the Mayor is charged with presenting to the City Council the following: (1) "a budget message outlining the financial policy of the City and describing in connection therewith the important features of the budget plan;" (2) "estimates of revenue" with the appropriate receipts; (3) "itemized estimates of expenditures;" and (4) reasons for all of the recommendations. WEST HAVEN, CONN., CITY CHARTER ch. XIX, pt. A, § 3 (1961, as revised). The Board of Finance assists the Mayor in the drafting of the budget proposal. Id. at § 2.

The City Council is ultimately responsible for adopting the operating budget for the City. Id. at § 3; *see also* Larke v. Morrissey, 155 Conn. 163, 172-73, 230 A.2d 562 (1967).[2] In carrying out this

---

[2] In Larke, 155 Conn. at 172-73, the Connecticut Supreme Court construed the term "final budget-making authority" under the version of Connecticut General Statues § 7-391 as it then existed, as applied to the City of West Haven. The Court concluded that the Mayor was the "final budget-making authority" according to the version of the statute then in existence. Id. at 171-73. In reaching this conclusion, the Court explained that the Mayor was charged with *preparing* the budget as distinguished from *adopting* the budget. Id. at 173.

The current version of § 7-391 no longer contains the definition of "final budget-making authority" construed by the Court in Larke. However, Connecticut General Statutes § 7-381, the definitions section for Chapter 110 of the Connecticut General Statutes, entitled Municipal Uniform

legislative function, the City Council must first hold public hearings and allow all those to come forward who wish to be heard on the City's appropriations. WEST HAVEN, CONN., CITY CHARTER ch. XIX, pt. A, § 4 (1996). During the course of its review of the proposed operating budget, the City Council may alter any item of the Mayor's proposal upon a vote of not less than two thirds of the City Council. Id. The City Council, after conducting the appropriate public hearings and reviewing the proposal, "shall adopt a budget and file the same with the Town and City Clerk." Id. Adoption of the budget requires a majority vote of the City Council. Id.

There is no dispute that the budget process set forth in the City Charter was followed for fiscal year 2002-2003. Pursuant to the City Charter, Mayor Borer presented his recommended operating budget to the City Council on March 21, 2002. *Ex. 4, Minutes of 3/21/02 Meeting.* The Mayor's recommended operating budget proposed the elimination of the position of electrical inspector (and the funding of an additional assistant building official position). *See Ex. B to Early Aff.* A public hearing on the budget was duly noticed for April 3, 2002 and was conducted on that date. *Ex. 2, Early, Aff. at ¶ 7.* Subsequently, on April 30, 2002 a motion to restore the position of electrical inspector to the Building Department budget was considered by the full City Council. *Ex. 2, Early Aff. at ¶ 13; Complaint ¶ 18, Ex. 1, excerpts of Plaintiff's Deposition at pp. 78-81.* This motion was voted on and

---

Fiscal Years, provides a nearly identical definition, but omits the term "final." Section 7-381 provides in relevant part: "budget-making authority . . . as applied to cities . . . means the board of finance or such other body or committee . . . as applied to cities having neither boards of finance nor such other such other bodies or committees, means the *mayor* . . . ." (emphasis added).

Larke is not controlling here because the term "budget-making authority" as construed therein is not the same as a "final policymaker" regarding the budget for the purposes of a claim under § 1983. Pursuant to Connecticut General Statutes § 7-388, the "budget-making authority" is required to submit "estimates and recommendations" to the appropriate legislative body at the annual budget meeting. The legislative body, in turn, must carry out its duties as set forth under the relevant charter or special act. In the present case, the Charter requires the City Council, not the Mayor, to review, amend and ultimately adopt the budget. This division of duties, as provided for in § 7-388, clarifies why the Court in Larke made the distinction between *preparing* and *adopting* the budget.

defeated because it did not garner the necessary two thirds majority to carry. *Id*. The Plaintiff was present at the April 30th meeting, and had the opportunity to address the City Council, but elected not to do so. *Ex. 1, excerpts of Plaintiff's Deposition at pp. 78-81.* On May 2, 2002, the City Council adopted the Mayor's recommended operating budget as amended by the City Council. *Ex. 6, Minutes of 5/2/02 Meeting.* As demonstrated by the amendments to the Mayor's recommended operating budget made by the City Council, the City Council garnered the necessary two thirds vote to override the Mayor's recommendations in numerous instances. *Id. and copy of Amendments appended to Ex. 6, Minutes of 5/2/02 meeting.*[3] The operating budget, as amended by City Council passed by the necessary majority vote. *Id*.

Regardless of the degree to which the Mayor is involved in the budgetary process, it is the City Council that ultimately adopts the budget for the City. As in <u>Legal Aid Society</u>, 114 F.Supp.2d at 232, Mayor Borer's proposal is subject to "plenary review" and alteration by the City Council. Accordingly, the City cannot be subjected to liability, under § 1983, for the decisions made by Mayor Borer with respect to the City's operating budget. The Defendants, therefore, respectfully request that summary judgment be entered as to Counts Two and Three insofar as they relate to the City.

  **2.** **Mayor Borer in his official capacity is entitled to summary judgment on Counts Two and Three of the Complaint because these claims duplicate those raised against the City. Alternatively, summary judgment should enter in favor of Mayor Borer in his official capacity on Counts Two and Three of the Complaint because the Plaintiff has failed to allege any wrongdoing on the part of a final policymaker with respect to the budget**

The Plaintiff claims that Mayor Borer is liable for actions taken in his official capacity as the Mayor of the City. *Complaint. ¶ 5.* These claims fail for two reasons. First, these claims are redundant

---

[3] The amendments to the Mayor's recommended operating budget indicate that the City Council altered the Mayor's recommendations by either increasing or decreasing the budgeted amount in excess of 80 instances.

9

to those asserted against the City. Second, these claims, like those made against the City, do not properly allege misconduct on the part of a final policymaker regarding the budget.

A suit against a municipal officer in his official capacity is the functional equivalent of a suit against the entity of which the officer is an agent. Goldberg v. Town of Rocky Hill, 973 F.2d 70, 73 (2d Cir. 1992). As it would be redundant to allow a claim to proceed against a municipality as well against the municipality's officials in their official capacities, claims made against a municipal officer in his or her official capacity are properly dismissed. Baines v. Masiello, 288 F.Supp.2d 376, 384-85 (W.D.N.Y. 2003); *see also* Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001); Junicewicz v. Patton, No. 01-CV-0519E, 2002 WL 31654957, at *5 (W.D.N.Y. Oct. 8, 2002). Accordingly, summary judgment in favor of Mayor Borer is warranted as to these claims on this ground alone.

Notwithstanding the duplicative nature of the Plaintiff's official capacity claims, it is clear that the City cannot be subject to liability because the Plaintiff has failed to allege and does not contend that there was any wrongdoing on the part of a final policymaker. Consequently, the Plaintiff's official capacity claims also fail under the same analysis employed with respect to the claims asserted against the municipality. *See* Martinez v. Simonetti, 202 F.3d 625, 631 n.6. (2d Cir. 2000) (concluding that the Magistrate properly granted summary judgment as to the defendant police commissioner because the liability of a municipal official sued in his official capacity is determined in the same manner as the municipality). Therefore, Mayor Borer is entitled to summary judgment on Counts Two and Three of the Complaint insofar as they relate to the conduct of the Mayor in his official capacity.

> **3.    Mayor Borer, in his individual capacity, is entitled to summary judgment on Counts Two and Three of the Plaintiff's Complaint because the Mayor is shielded from individual liability by legislative immunity.**

The Plaintiff also alleges that Mayor Borer is liable in his individual capacity for his actions regarding the budget. According to the Plaintiff, Mayor Borer is personally liable for proposing an

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O. BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

operating budget eliminating the Plaintiff's position, among others, because this conduct violates the Plaintiff's rights guaranteed by the First Amendment to the United States Constitution. *Complaint.* ¶¶ *12, 18-19, 30, 33-34*. These claims, however, cannot stand because the Mayor is legislatively immune for his actions regarding the preparation and recommendation of the operating budget for the City. Mayor Borer's actions with respect to the budget are quintessentially legislative and, therefore, protected by absolute immunity.

"Legislators are entitled to absolute immunity from civil liability for their legislative activities. [The Second Circuit] has previously held that absolute legislative immunity from Section 1983 actions extends to local legislators." Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 210 (2d Cir. 2003). "Regardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability." Bogan v. Scott-Harris, 523 U.S. 44, 55, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). This defense is available not only to those officials in the legislative branch of government, but to any government official who performs legislative functions. Id.

"The test for determining whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. . . . Under this functional test, immunity depends on the nature of the act itself, not the identity of the actor performing it." Harhay, 323 F.3d at 210 (citation omitted) (quotation marks omitted). "In order for legislative immunity to attach, the act in question must be taken in the sphere of legitimate legislative activity." Id. (quotation marks omitted). The act does not have to be "quintessentially legislative," rather the act must be an integral step in the legislative process. Bogan, 523 U.S. at 55; Harhay, 323 F.3d at 211.

"It is settled law that job elimination through the budgetary process is a legislative act to which the doctrine of absolute [legislative] immunity is squarely applicable." Gordon v. Katz, 934 F.Supp.

11

79, 82 (1996), *aff'd*, 101 F.3d 1393 (2d Cir. 1996) (quotation marks omitted).  Budgetary decisions involving "the termination of a position . . . unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office." Bogan, 523 U.S. at 56.  Thus, the fact that decisions regarding the elimination of positions for budgetary reasons are related to employment does not detract from the legislative nature of such decisions.  Harhay, 323 F.3d at 211.

Mayor Borer's actions regarding the operating budget were quintessentially legislative in nature. *See Discussion of process followed for FY 2002-2003 in Part III.A.1.*  Significantly, the Plaintiff does not allege nor are there any facts to suggest that Mayor Borer deviated from the legally accepted procedures set forth in the Charter.  Indeed, the Plaintiff's Complaint acknowledges that the budget process was followed.  *See Complaint ¶¶ 16,18.*  "In order to defeat absolute legislative immunity [the plaintiff] must show that [Mayor Borer] did not follow legally accepted legislative procedure in the adoption of the . . . budget. . . .  A deviation from historical practice is not sufficient to defeat a claim of absolute legislative immunity, so long as the procedures followed are legally correct." Gordon, 934 F.Supp. at 83.  The Plaintiff cannot make such a showing in the present case and, therefore, Mayor Borer may properly invoke the defense of legislative immunity.

Finally, the fact that the Plaintiff's allegations implicate First Amendment rights does not alter the analysis. The alleged improper motivation behind a legislative act is irrelevant; Gordon, 934 F. Supp. at 84; rather, the key element is the nature of the act performed.  Bogan, 523 U.S. at 54.

Based on the foregoing, it is clear that "[t]he acts of *proposing*, voting on, and adopting the . . . budget which eliminated [the plaintiff's position], were purely legislative acts to which absolute legislative immunity applies." Gordon, 934 F.Supp. at 83 (emphasis added).  Accordingly, the Plaintiff's claims against Mayor Borer, in his individual capacity, are barred by the doctrine of

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O. BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

legislative immunity. Summary judgment should therefore enter in favor of Mayor Borer in his individual capacity as to Counts Two and Three of the Complaint.

### B. SUMMARY JUDGMENT SHOULD ENTER IN FAVOR OF THE DEFENDANTS ON COUNT ONE OF THE PLAINTIFF'S COMPLAINT.

Count One of the Complaint alleges a claim of retaliation under Connecticut General Statutes § 31-51q. The Plaintiff claims that the defendants' conduct with respect to the budget was substantially motivated by the Plaintiff's exercise of his First Amendment rights, i.e. his decision to run in the 2001 Democratic primary on a ticket opposing Mayor Borer. *Complaint.* ¶¶ *26-27.*

Connecticut General Statutes § 31-51q provides:

> Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer.

"Section 31-51q protects an employee from retaliatory discharge due to that employee's exercise of certain enumerated rights, including, inter alia, the right to freedom of expression as guaranteed by the first amendment to the United States constitution, and article first, § 4, of the Connecticut constitution. . . . Those constitutional provisions safeguard statements made by an employee that address a matter of public concern, but provide no security with respect to statements that address wholly personal matters."[4] Daley v. Aetna Life & Cas. Co., 249 Conn. 766, 778, 734 A.2d 112 (1999).

---

[4] The Plaintiff alleges that his participation in the 2001 Democratic primary for the City was constitutionally protected conduct because such conduct addressed matters of public concern. *Complaint.* ¶¶ *26, 33.* It is important to note, however, that speech or conduct aimed to further one's

13

"In order for a plaintiff to prevail in a Section 31-51q action, the plaintiff must allege and prove that: (1) [he] was exercising rights protected by the First Amendment to the United States Constitution or by an equivalent provision of the Connecticut Constitution; (2) that [he was disciplined or discharged] on account of [his] exercise of such rights; and (3) that [his] exercise of First Amendment or equivalent state constitutional rights did not substantially or materially interfere with [his] bona fide job performance or with [his] working relationship with [his] employer." Downing v. West Haven Board of Education, 162 F.Supp.2d 19, 33 (D. Conn. 2001); Lowe v. Amerigas, Inc., 52 F.Supp.2d 349, 359 (D. Conn. 1999).

Summary judgment should enter in favor of the Defendants on Count One of the Complaint for the following reasons: the Court should not exercise its pendent jurisdiction over the Plaintiff's state law claims because the Plaintiff's federal claims fail to state a legally sufficient claim; the Plaintiff's claims against the City of West Haven and the Mayor in his official capacity fail because there is no dispute that the Mayor is not a final policymaker with respect to the operating budget; and the Plaintiff's claim against Mayor Borer in his individual capacity is barred by the doctrine of legislative immunity.

    **1.**     **This Court should decline jurisdiction over the Plaintiff's state law claims because the Plaintiff's federal claims cannot survive summary judgment**

This Court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367 (2000). Subsection (a) of that statute provides in relevant part:

> [I]in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental

---

own political candidacy is a matter of self-interest rather than one of public concern. Such speech or conduct, therefore, is not protected under either the federal or state constitution. See Hellstrom v. Dep't of Veteran Affairs, 178 F.Supp.2d 164, 169 (N.D.N.Y. 2001), aff'd., 178 Fed. Appx. 651 (2002); Sierra v. State, CV000803588, 2003 WL 22413679, at *4 (Conn. Super. Oct. 14, 2003).

>jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Subsection (c), however, provides in relevant part that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "Thus, in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." Valencia v. Lee, 316 F.3d 299, 305 (2d Cir. 2003); *see also* Zak v. Robertson, 249 F. Supp.2d 203, 209 (D. Conn. 2003) (declining to exercise supplemental jurisdiction over plaintiffs' state claims because the Court entered summary judgment for the defendants on the plaintiffs' federal claims).

Count One of the Complaint alleges a state law cause of action under § 31-51q. Because the Plaintiff's federal claims, under § 1983, cannot survive summary judgment, this Court should decline to exercise its supplemental jurisdiction over Count One.

### 2. There is no basis for liability, under § 31-51q, against the City and Mayor Borer, in his official capacity, because the Plaintiff has failed to allege wrongdoing on the part of a final policymaker with respect to the operating budget

The Plaintiff's allegations against the City and Mayor Borer, in his official capacity, are nearly identical to those made under § 1983. Where claims brought pursuant to § 31-51q are nearly identical to claims made pursuant to § 1983, they are subject to the same analysis. In other words, if the claim fails under § 1983, it likewise fails under 31-51q. *See* Downing, 162 F.Supp.2d at 33; Ritz v. East Hartford, 110 F.Supp.2d 94, 103 (D. Conn. 2000); Gottlob v. Connecticut State Univ., CV930521148S, 1996 WL 57087, at *3 (Conn. Super. Jan. 19, 1996). Accordingly, because the Plaintiff's § 1983 claims against the City and against the Mayor in his official capacity fail due to the fact that there is no

15

dispute that Mayor Borer was not the final policymaker with respect to the decision to eliminate the position of Electrical Inspector, Plaintiff's claims under § 31-51q likewise fail.

As with those claims asserted under § 1983; *see* Part III A. 1.; the Plaintiff's claims under § 31-51q must fail because the Plaintiff has not alleged any wrongdoing on the part of a final policymaker with respect to the budget. Legal Aid Society, 114 F.Supp.2d at 232-33. Without such allegations, there is no basis for liability on the part of the City. Moreover, the Plaintiff's official capacity claim fails because it is duplicative of the claim raised against the City. *See* Part III A. 2..

Based upon the foregoing, the defendants are entitled to judgment as a matter of law. The defendants, therefore, respectfully request that summary judgment be entered as to Count One insofar as it relates to the City and Mayor Borer in his official capacity.

### 3. The Plaintiff's claim under § 31-51q against Mayor Borer in his individual capacity is barred by the doctrine of legislative immunity

As set forth in Part III A. 3. of this memorandum, municipal legislators are entitled to absolute immunity from civil liability for their legislative activities. Bogan, 523 U.S. at 52; Harhay, 323 F.3d at 210. Connecticut courts have recognized the doctrine of legislative immunity. AvalonBay Comtys., Inc. v. Orange, CV 99065826, 2000 WL 226374, at *13 (Conn. Super. Feb. 9, 2000), *rev'd on other grounds*, 256 Conn. 557, 775 A.2d 284 (2001) (special defenses not at issue on appeal); Anonymous v. Connecticut Bar Examining Comm., CV94-0534160-S, 1995 WL 506660, at *5-*6 (Conn. Super. Aug. 17, 1995); Bials v. Portland, 59608, 1992 WL 189358, at *2 (Conn. Super. July 27, 1992).

It is well established that job elimination through the budgetary process is a legislative act that is protected by the doctrine of legislative immunity. Bogan, 523 U.S. at 56; Harhay, 323 F.3d at 211; Gordon, 934 F.Supp. at 82. Moreover, decisions regarding the elimination of jobs through the budgetary process do not lose their legislative character merely because such decisions are related to

employment.  Harhay, 323 F.3d at 211.

The Plaintiff's claims under § 31-51q, like those raised under § 1983, are barred by the doctrine of legislative immunity.  Mayor Borer's actions regarding the operating budget were quintessentially legislative in nature.  In addition, the Plaintiff has not alleged, and cannot substantiate, that Mayor Borer deviated from the procedures set forth in the Charter.  Because Mayor Borer acted in his legislative capacity, and in accordance with the prescribed procedures set forth in the Charter, the Plaintiff cannot assert the present claim as a matter of law.  Summary judgment should enter in favor of Mayor Borer in his individual capacity at to Count One of the Complaint.

## IV.    CONCLUSION

The Plaintiff's claims against the City and Mayor Borer in his official capacity fail because the Plaintiff has failed to allege any wrongdoing on the part of a final policymaker regarding the budgetary process.  Moreover, the Plaintiff cannot assert liability against these defendants on the basis of *respondeat superior*.  The claims against Mayor Borer in his individual capacity also fail because Mayor Borer is entitled to legislative immunity for his acts with respect to participating in the budget process for the City. The Defendants' motion for summary judgment should be granted.

17

SUSMAN, DUFFY & SEGALOFF, P.C. • ATTORNEYS AT LAW
P.O. BOX 1684 • NEW HAVEN, CONNECTICUT 06507 • (203)624-9830 • JURIS NUMBER 62505

THE DEFENDANTS,
CITY OF WEST HAVEN AND
H. RICHARD BORER, JR.


By:_____
    Jennifer L. Schancupp
    Federal Bar No. ct11876
    Susman, Duffy & Segaloff, P.C.
    55 Whitney Avenue
    P O Box 1684
    New Haven, CT 06507

## CERTIFICATION

This is to certify that a copy of the foregoing was mailed this day, via first class mail, postage prepaid, to the following:

| Counsel for the Plaintiff | Co-Counsel for the Defendants |
|---|---|
| Gary Phelan, Esquire | Michael P. Farrell, Esquire |
| Gary Phelan, LLC | 201 Center Street |
| 433 S. Main Street, Suite 102 | West Haven, CT 06516 |
| West Hartford, CT 06110 | |


_____
Jennifer L. Schancupp

I:\Client U_Z\West Haven\Reilly\pleadings\Memorandum of Law in support of MSJ.wpd