Source: Legal > / . . . / > CT Federal District Courts
Terms: name(richardson and metropolitan district commission) and date geq (06/20/2002) (Edit Search)

*2003 U.S. Dist. LEXIS 12757, \**

TAMMY D. **RICHARDSON**, Plaintiff v. **METROPOLITAN DISTRICT COMMISSION**, ET Al., Defendants.

CIVIL ACTION NO. 3-00-CV-1062 (JCH)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2003 U.S. Dist. LEXIS 12757

**July 23, 2003, Decided**

**DISPOSITION:** Plaintiff's motion for summary judgment denied. Plaintiff's motion to strike denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendant municipal corporation and officials for discriminating and retaliating against her on the basis of her race, religion, and sex seeking relief pursuant to 42 U.S.C.S. § 1983, Title VII of the Civil Rights Act of 1964, the Family Medical Leave Act (FMLA), and state common law. Defendants filed a motion for summary judgment on the § 1983 sexual discrimination claim. The employee filed a motion to strike.

**OVERVIEW:** The employee was an African-American woman, who was a practicing Jehovah's Witness. She worked as an account clerk. Pay raises had been withheld twice due to unsatisfactory evaluations she had received. In March, she had been given permission to use vacation time to attend a religious convention in July. One day before the convention, her supervisor revoked his approval. She attended anyway and was suspended. Her supervisor swore at her and called her names. She complained about his conduct to the director of human resources and the president of her union. The court held that there was material issue of fact as to whether her supervisor's conduct had created a hostile work environment and as to whether she suffered an adverse employment action as a result of her supervisor's sex discrimination. There was a material issue of fact as to whether the continued harassment by the supervisor was ratified by and acquiesced to by the board. The court did not find that the employee was prejudiced by the defendants' untimely service of their motion upon the plaintiff, nor by their reference to an earlier-filed statement.

**OUTCOME:** Defendants' motion for summary judgment was denied. The employee's motion to strike was denied.

**CORE TERMS:** summary judgment, sex discrimination, harassment, prima facie case, hostile, municipal, personnel, hostile work environment, policymaking, municipality, material issue of fact, sexual discrimination, subordinates, workplace, ratified, motion to strike, recommendations, prong, supervisor, increment, discriminatory conduct, non-discriminatory, ratification, offensive, pervasive, abusive, custom, convention, religious, evidence presented

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Governments > State & Territorial Governments > Claims By & Against

**HN1** The United States Supreme Court has held that official capacity suits are only another way of pleading an action against an entity of which an officer is an agent. Thus, suits against state officials in their official capacity should be treated as suits against the state. An official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the state itself. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof

**HN2** Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden of showing that no genuine factual dispute exists rests upon the moving party. However, a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. If little or no evidence supports the non-moving party's case, there is no genuine issue of material fact and summary judgment may be appropriate. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN3** In assessing the record to determine if genuine issues of material fact exist, all ambiguities must be resolved, and all inferences drawn, in favor of the party against whom summary judgment is sought. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. More Like This Headnote

Constitutional Law > Equal Protection > Gender & Sex
Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment

**HN4** The United States Supreme Court has declared that individuals have a constitutional right under the Equal Protection Clause to be free from sex discrimination in public employment. Harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort. In some circumstances a 42 U.S.C.S. § 1983 claim may be properly grounded on a violation of the Equal Protection Clause of the Fourteenth Amendment based on sexual harassment in the workplace. When sexual harassment includes conduct evidently calculated to drive someone out of the workplace, the harassment is tantamount to sex discrimination. More Like This Headnote

Constitutional Law > Equal Protection > Gender & Sex
Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment

**HN5** A claim for harassment which creates a hostile work environment is cognizable under 42 U.S.C.S. 1983. Workplace harassment claims brought under § 1983 parallel those brought under Title VII of the Civil Rights Act of 1964, and therefore, courts have applied the same requirements of severity and pervasiveness. More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment

**HN6** To establish a hostile work environment, a plaintiff must show that she was subjected to harassment sufficiently severe or pervasive to alter the conditions of her employment and create a hostile working environment and that the harassing conduct occurred because of her sex. In order for the harassment of the plaintiff to be actionable, the harassing conduct must have been so severely permeated with

discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered. The workplace must have been both objectively and subjectively hostile. Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.   More Like This Headnote

Labor & Employment Law > Discrimination > Sexual Harassment > Hostile Work Environment

**HN7** In determining whether a workplace is hostile or abusive, the finder of fact must look to the totality of the circumstances of the workplace and the alleged harassment, circumstances which may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.   More Like This Headnote

Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Coverage & Definitions
Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

**HN8** The initial burden in a sex discrimination claim is on the plaintiff to establish a prima facie case of discrimination. To do so, the plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. Once a plaintiff has established a prima facie case, a rebuttable presumption of discrimination arises and the burden shifts to the defendants to offer a legitimate, non-discriminatory reason for its actions. Upon the articulation of such a nondiscriminatory reason for the employment action, the presumption of discrimination which arose with the establishment of the prima facie case drops out.   More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

**HN9** Once a defendant employer offers a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to fulfill her ultimate burden of proving that the defendant intentionally discriminated against her in the employment decision. In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendants was not the employer's true reason, but was a pretext for discrimination. Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.   More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

**HN10** Evidence that an employer's reason is false, combined with the evidence presented to establish a prima facie case, in some cases, can be enough to sustain a plaintiff's burden, and a plaintiff need not have independent evidence of discrimination. A finder of fact may consider the strength of the prima facie case, the probative value of the proof that the defendant's reason is pretextual, and any

other evidence presented in the case when determining if the plaintiff has sustained her burden. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Immunity > Local Governments
**HN11** A municipality may not be held liable under 42 U.S.C.S. § 1983 for the actions of individuals solely on a theory or respondeat superior. It may only be held liable if the conduct that caused the constitutional violation was undertaken pursuant to a policy or custom of the municipality. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Immunity > Local Governments
**HN12** The United States Court of Appeals for the Second Circuit has found that a municipality may be held liable under 42 U.S.C.S. § 1983 when the injury was inflicted by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. Additionally, a supervisor's acquiescence to the actions of his subordinates may amount to a policy or custom, if the subordinate's discriminatory practice is so manifest as to imply the constructive acquiescence of senior policy-making officials. When a subordinate's decision is subject to review by the municipality's authorized policy makers, their ratification would be chargeable to the municipality because their decision is final. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Immunity > Local Governments
**HN13** Determining whether an official had final policymaking authority is a legal question, to be answered on the basis of state law. The matter of whether the official is a final policymaker under state law is to be resolved by the trial judge before the case is submitted to the jury. Mere discretion in the performance of his duties is not sufficient. However, the official need only have the power to make official policy on a particular issue. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Immunity > Local Governments
**HN14** The United States Court of Appeals for the Second Circuit has ruled that a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials and that municipal inaction such as the persistent failure to discipline subordinates who violate persons' civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Strike
Civil Procedure > Summary Judgment > Supporting Papers & Affidavits
**HN15** A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment motion. The moving party must be specific in regards to what it is seeking to have stricken and must set forth reasons for why the materials should not be considered by the court. A party can make a motion to strike affidavits if they are not made on the basis of personal knowledge. A motion to strike can also be used to challenge documentary evidence that has not been properly authenticated. However, the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment. More Like This Headnote

**COUNSEL:** [*1] Tammy D Richardson, PLAINTIFF, Pro se, East Hartford, CT USA.

For Metroplitan District Commission, DEFENDANT: Anthony J Palermino, Hartford, CT USA.

**JUDGES:** Janet C. Hall, United States District Judge.

**OPINIONBY:** Janet C. Hall

**OPINION:**

**RULING ON MOTION FOR SUMMARY JUDGMENT [DKT. NO. 62] AND MOTION TO STRIKE [DKT. NO. 69]**

**I. INTRODUCTION**

This case concerns claims for money damages and equitable relief brought pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), the Family Medical Leave Act of 1993 ("FMLA"), and the state common law of intentional infliction of emotional distress. The plaintiff, Tammy D. Richardson ("Richardson"), alleges that the defendants, the Metropolitan District Commission ("MDC"), n1 unlawfully discriminated and retaliated against her on the basis of her race, religion, and sex.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 In addition to the Metropolitan District Commission, the plaintiff also names Norman LeBlanc, Jeffrey Johnson, John J. McAuliffe, Dawn Fiorentino and Margaret Roughan as defendants. Each of these individuals are sued solely in their official capacities, because the court previously dismissed, for lack of proper service, the plaintiff's claims against these named defendants in their individual capacities. [Dkt. No. 19].

*HN1* The Supreme Court has held that official capacity suits are "only another way of pleading an action against an entity of which an officer is an agent." Hafer v. Melo, 502 U.S. 21, 25, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991) (quoting Kentucky v. Graham, 473 U.S. 159, 165, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985)). Thus, suits against state officials in their official capacity should be treated as suits against the state. Id. "An official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.'" Id. at 26.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - - [*2]

On August 7, 2002, the court granted partial summary judgment for the defendants on some of the plaintiff's claims. [Dkt. No. 58]. The plaintiff subsequently moved for reconsideration of the court's grant of partial summary judgment for the defendants. [Dkt. No. 59]. In its ruling on the plaintiff's motion for reconsideration, the court found that the earlier dismissal of the plaintiff's section 1983 sexual discrimination claim was in error. The court found that the issue of sexual discrimination under Section 1983 had not been adequately briefed by the parties, and *sua sponte*, granted the defendants leave to file a motion for summary judgment solely on the plaintiff's section 1983 sex discrimination claim. As a consequence, the defendants filed their current motion for summary judgment on the section 1983 sexual discrimination claim. Richardson opposes their motion.

**II. FACTUAL BACKGROUND** n2

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 According to the parties' Rule 9(c) Statements, these facts are undisputed for purposes of the motion for summary judgment.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*3]

Richardson is an African-American woman, who is a practicing Jehovah's Witness. On February 26, 1996, Metropolitan District Commission ("MDC") hired Richardson as a clerk typist in the Treasury Department. On or about October 26, 1996, MDC promoted Richardson to Account Clerk.

On September 20, 1997, Richardson was involved in a non-work-related automobile accident that resulted in a 22% disability of the lower back. Richardson Aff. [Dkt. No. 46], Ex. A, at 5. As a result of the accident, Richardson was out from work from September 20, 1997 through December 8, 1997. On several occasions between 1998 and 1999, Richardson took medical absences because of the injuries sustained in the accident.

In October 1998, Richardson received an evaluation that rated her performance as unsatisfactory, based in part on her absences from work, and her annual increment was withheld. MDC placed Richardson on a six-month probationary period. The comment section of the evaluation referenced Richardson's use of FMLA absences, but noted that her lack of attendance beyond the FMLA absences resulted in an inconsistent volume of work. All Richardson's prior evaluations were satisfactory.

On March 31, 1999, Richardson [*4] left work on a medical leave of absence because of pain from the September 1997 accident. On June 1, 1999, MDC processed an FMLA certification from Richardson's chiropractor that stated the need for medical leave. On June 4, 1999, MDC acknowledged receipt of the chiropractor's certification, but sent a letter to Richardson requesting additional medical documentation that projected the length of absence necessary and described Richardson's ability to return to work.

On July 1, 1999, Richardson attempted to return to work, but her supervisor, Jeffrey Johnson ("Johnson"), sent her home. On July 1, 1999, Richardson's chiropractor faxed a "Return to Work" form to MDC that explained that Richardson could return to regular duties with a few limitations: she could not lift or carry more than ten pounds; she should work half-days until further notice; and she requires chiropractic care twice a week. On July 9, 1999, when she returned from the March 31, 1999 medical leave, MDC reduced Richardson's responsibilities at work and elevated a less qualified white employee to her position. Richardson filed another "Return to Work" form on July 13, 1999 that stated she should only work part-time until [*5] July 23, 1999.

On July 23, 1999, Richardson attended a religious convention. Richardson had requested the day off in March, and Johnson approved the use of vacation time. On the day before the convention, Johnson informed Richardson that he revoked his approval. When Richardson returned to work on July 26, 1999, MDC suspended her for two days without pay for her absence on July 23 and part-time attendance from July 12 through July 21. On August 6, 1999, Richardson filed a complaint with the Connecticut Commission on Human Rights and Opportunities.

Because of her medical absences, Richardson's six-month probationary period extended until August 1999. On August 30, 1999, MDC reviewed Richardson's performance and concluded that it continued to be unsatisfactory. Accordingly, MDC denied Richardson a step increment.

Richardson took a medical absence for injuries from the accident and job-related stress on November 3, 1999, until her voluntary resignation on December 7, 1999. On December 2, 1999, Richardson had received a letter from Northeast Utilities System confirming her employment starting December 13, 1999.

While Richardson was employed at MDC, her supervisor, Jeffrey Johnson ("Johnson"), [*6]

swore at her and called her names. She complained about his conduct to the Director of Human Resources and the president of her union.

## III. DISCUSSION

A. Summary Judgment Standard

**HN2** Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Hermes Int'l v. Lederer de Paris Fifth Ave, Inc., 219 F.3d 104, 107 (2nd Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)). However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288, 20 L. Ed. 2d 569, 88 S. Ct. 1575 (1968)) **[*7]** (alteration in original and internal quotations omitted). If little or no evidence supports the non-moving party's case, there is no genuine issue of material fact and summary judgment may be appropriate. Gallo, 22 F.3d at 1223-24.

**HN3** In assessing the record to determine if genuine issues of material fact exist, all ambiguities must be resolved, and all inferences drawn, in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 721 (2d Cir. 1994). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

B. Section 1983 Hostile Work Environment and Sex Discrimination

Richardson claims that section 1983 was violated as a result of the hostile **[*8]** work environment created by Jeffrey Johnson, her supervisor, and by the adverse employment actions which were taken as a result of her complaints regarding Johnson's sex discrimination. **HN4** The Supreme Court declared twenty-four years ago that individuals have a constitutional right under the equal protection clause to be free from sex discrimination in public employment. Annis v. County of Westchester, N.Y., 36 F.3d 251, 254 (2d Cir. 1994) (citing Davis v. Passman, 442 U.S. 228, 234-35, 60 L. Ed. 2d 846, 99 S. Ct. 2264 (1979)). Harassment that transcends coarse, hostile and boorish behavior can rise to the level of a constitutional tort. Id. (citing Gierlinger v. New York State Police, 15 F.3d 32, 34 (2d Cir. 1994) ("In some circumstances a § 1983 claim may be properly grounded on a violation of the Equal Protection Clause of the Fourteenth Amendment based on sexual harassment in the workplace."). When sexual harassment includes conduct evidently calculated to drive someone out of the workplace, the harassment is tantamount to sex discrimination. Id.

1. Hostile Work Environment

**HN5** A claim for harassment which creates a hostile **[*9]** work environment is cognizable under section 1983. Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143-44 (2d Cir. 1993). Workplace harassment claims brought under section 1983 parallel those brought under Title VII, and therefore, courts have applied the same requirements of severity and pervasiveness. See, e.g., McPhaul v. Board of Comm'rs of Madison County, 226 F.3d 558,

566 n.6 (7th Cir. 2000)("Because section 1983 claims generally follow the contours of Title VII claims, we will apply the same hostile environment standard that is applied in Title VII cases."); Rafiy v. Nassau County Medical Center, 218 F. Supp. 2d 295, 305 (E.D.N.Y. 2002) (requiring harassment to be severe and pervasive to be cognizable under the equal protection clause); Lange v. Town of Monroe, 213 F. Supp. 2d 411, 423 (S.D.N.Y. 2002) (same); Ericson v. City of Meriden, 113 F. Supp. 2d 276, 290 (D. Conn. 2000)(same).

*HN6* To establish a hostile work environment, the plaintiff must show that she was subjected to harassment "sufficiently severe or pervasive to alter the conditions of [her] employment and create a hostile [*10] working environment," Harris v. Forklift Systems, 510 U.S. 17, 21, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993), and that the harassing conduct occurred because of her sex, Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002). In order for the harassment of the plaintiff to be actionable, the harassing conduct must have been "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." Id. at 373. The workplace must have been both objectively and subjectively hostile.

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive--is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

Harris, 510 U.S. at 21-22. *HN7* In determining whether a workplace is hostile or abusive, the finder of fact must look to the totality of the circumstances [*11] of the workplace and the alleged harassment, circumstances which may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Alfano, 294 F.3d at 374 (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)).

As evidence of a hostile environment, Richards cites to the fact that after her automobile accident in 1997, Johnson began a campaign of harassment which included but was not limited to "belittling the plaintiff, verbally abusing plaintiff and constantly calling her a 'bitch' and repeatedly threatening to terminate the plaintiff's employment." Am. Compl. [Dkt. No. 15] P 22. Richardson testified in her deposition that Johnson punctuated his references to her with phrases such as "fuck this, or you're going to do whatever the fuck I tell you to do." Richardson Depo. Def.'s Memo. in Supp. of [*12] Summ. J. [Dkt. No. 63] Ex. C at 27. Richardson argues that she specifically informed the human resources department that Johnson constantly referred to her and other women in the office as a "bitch" or "bitches" and that the language was offensive and distressing. Am. Compl. [Dkt. No. 15] P 28. Based on this evidence, Richardson has created a material issue of fact as to whether Johnson's conduct created a hostile work environment.

2. Sex Discrimination

Richardson also argues that she suffered sexual discrimination. *HN8* The initial burden in a sex discrimination claim is on the plaintiff to establish a prima facie case of discrimination. To do so, the plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.

Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)). Once a plaintiff has established a prima facie case, a rebuttable presumption [*13] of discrimination arises and the burden shifts to the defendants to offer a legitimate, non-discriminatory reason for its actions. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). Upon the articulation of such a nondiscriminatory reason for the employment action, the presumption of discrimination which arose with the establishment of the prima facie case drops out. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993).

*HN9* Once a defendant offers a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to fulfill her ultimate burden of proving that the defendant intentionally discriminated against her in the employment decision. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000). In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, non-discriminatory reason offered by the defendants was not the employer's true reason, but was a pretext for discrimination. Id. As the Supreme Court explained in Reeves:

> Proof [*14] that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose . . . . Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

530 U.S. at 147 (citations omitted). *HN10* Evidence that an employer's reason is false, combined with the evidence presented to establish a prima facie case, in some cases, can be enough to sustain a plaintiff's burden, and a plaintiff need not have independent evidence of discrimination. Id.; see also Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 38182 (2d Cir. 2001). A finder of fact may consider the strength of the prima facie case, the probative value of the proof that the defendant's reason is pretextual, and any other evidence presented in [*15] the case when determining if the plaintiff has sustained her burden. Zimmerman, 251 F.3d at 381-82.

Richardson's status as a woman places her in a protected class for a sex discrimination claim, thereby satisfying the first prong of a prima facie case. The second prong, that Richards was qualified for the position, has not been disputed by MDC, and is therefore satisfied. As for the third prong, that she suffered an adverse employment action, Richardson cites to the denial of step increases on two occasions, the reassignment of her job responsibilities, and the denial of a vacation day to attend, and suspension for attending, a religious convention. Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Dkt. No. 67] at 45 . Such evidence is sufficient to satisfy the third prong of a prima facie case. Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000). Richardson has also satisfied the fourth prong, that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. For instance, Richardson alleges that "on or about October 13, 1998, [she] was denied a merit pay increase as a result of a poor performance [*16] evaluation given to her by Johnson." Am. Compl. [Dkt. No. 15] P 23. Richardson also alleges that as a result of the complaints she filed concerning Johnson's conduct she was denied a step increment in her pay. Id. P 29(a). She further states that prior to her complaints against Johnson she was granted reasonable accommodation of her religious beliefs, but that after her complaint, the defendants acted in a retaliatory and malicious manner to deny her request to attend a religious convention. Id. P

29(e). Richardson also argues that the fact that she filed a complaint against Johnson with the defendants' Human Resources Department on or about March 26, 1999, demonstrates that Roughan, LeBlanc, Fiorentino and McAuliffe n3 were aware of the unconstitutional conduct of Johnson. Pl.'s Local 9(c)(2) Statement [Dkt. No. 54] P10. After Richardson filed a report with Roughan addressing Johnson's conduct, Roughan responded by asking, "what do you want us to do about it?" Richardson Depo. Def.'s Memo. in Supp. of Summ. J. [Dkt. No. 63] Ex. C at 27. Taking the facts in the light most favorable to the plaintiff, Richardson has established a prima facie case as to whether she suffered [*17] an adverse employment action as a result of Johnson's sex discrimination. The defendants do not specifically articulate a non-discriminatory reason for the employment actions taken against Richardson, but rather dispute that she suffered sex discrimination at all, and also dispute that MDC, as a municipal entity, can be held liable for the actions of any of the named individuals. Richardson has, however, established a material issue of fact as to whether she suffered sex discrimination, and therefore summary judgment is not appropriate on this ground. As for municipal liability, the court will address this argument next.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Johnson was Richardson's immediate supervisor in the treasury department. Def.'s Statement of Material Facts Local 9(c)(1) Statement [Dkt. No. 41]. Margaret Roughan was the Director of Human Resources and reported directly to the District Manager. Id. LeBlanc was the Manager of Treasury, and reported directly to the District Manager. Id. McAuliffe was the Customer Accounting and Risk Services Administrator and reported to LeBLanc. Id. Fiorentino was the Risk Services Analyst and reported to McAuliffe, until his retirement on July 1, 1999, and which point she was elevated to his position. Id.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*18]

C. Municipal Liability

Although Richardson has created a prima facie case as to whether she was forced to work in a hostile work environment and suffered sex discrimination, HN11 MDC may not be held liable under section 1983 for the actions of individuals solely on a theory or respondeat superior. Jeffes v. Barnes, 208 F.3d 49, 56-57 (2d Cir. 2000) (citing Monell v. Department of Social Services, 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978)). MDC may only be held liable if the conduct that caused the constitutional violation was undertaken pursuant to an MDC policy or custom. Id. As Richardson's suit is properly characterized as one against the state, she may only recover if a policy or custom played some part in the discrimination. Hafer, 502 U.S. at 25. The defendants argue that Richardson's complaint fails, because she cannot demonstrate that the alleged violations of section 1983 occurred as a result of a policy or custom of MDC. Richardson, however, argues that a local government unit may be liable when the person was injured by a local government official or employee with final policy making authority. Pl. [*19] 's Memo. In Opp'n to Mot. for Summ. J. [Dkt. No. 67] at 2.

HN12 The Second Circuit has found that a municipality may be held liable under section 1983 when the injury was inflicted by its "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Jeffes, 208 F.3d at 57. Additionally, a supervisor's acquiescence to the actions of his subordinates may amount to a policy or custom, if the subordinate's "discriminatory practice [is] so manifest as to imply the constructive acquiescence of senior policy-making officials." Wimmer v. Suffolk County Police Department, 176 F.3d 125, 137 (2d Cir. 1999) (citing Sorlucco v. New York City Police Department, 971 F.2d 864, 870 (2d Cir. 1992). When a subordinate's decision is subject to review by the municipality's authorized policy makers, "their ratification would be chargeable to the

municipality because their decision is final." City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 99 L. Ed. 2d 107, 108 S. Ct. 915 (1988). Thus, to determine whether MDC can be held liable for the discrimination suffered by Richardson, the court must decide who had [*20] policymaking authority at MDC and must determine if there is a material issue of fact as to whether this person, or group, participated in, or ratified the discriminatory conduct.

*HN13* Determining whether an official had final policymaking authority is a legal question, to be answered on the basis of state law. Jeffes, 208 F.3d at 57. "The matter of whether the official is a final policymaker under state law is 'to be resolved by the trial judge *before* the case is submitted to the jury.'" Id. (quoting, Jett v. Dallas Independent School District, 491 U.S. 701, 737, 105 L. Ed. 2d 598, 109 S. Ct. 2702 (1989) (emphasis original). Mere discretion in the performance of his duties is not sufficient. However, the official need only have the power to make official policy on a particular issue. Id. For example, in Jeffes, the Second Circuit found that a county sheriff had final policymaking authority with respect to matters of personnel because there was no provision of state or local law that required the sheriff to answer to any other entity in the management of his jail staff. Id.

MDC is a municipal corporation chartered under the laws of [*21] the state of Connecticut, and it performs water supply maintenance, sewer services, and resource recovery. Second Am. Compl. [Dkt. No. 15]. It is composed of eight member towns in Connecticut that include Hartford, West Hartford, East Hartford, Rocky Hill, Wethersfield, Newington, Bloomfield, and Windsor. The affairs of the MDC are managed by a board of commissioners, which is composed of twenty-nine electors. Def.'s Ex. A [Dkt. No. 65] Part 1 at §§ 2-1, 2-2. Upon a review of the charter and by-laws of the MDC, it is clear that the board is the policymaking authority for MDC. Officers and employees of MDC may be removed by the board at pleasure, and the board may also appoint to any deputy any powers as the board deems necessary. Id. at §§ 2-8, 2-9. Further, the board is responsible for the development and implementation of policy concerning personnel matters. Id. Part 3 at § B6g. Although MDC has a Personnel, Pension and Insurance Committee ("Committee"), consisting of eleven commissioners of the district, this Committee only makes recommendations to the Board on matters related to salaries and wages. Id. Part 3 at § B3h. As such, it is the Board that is the policymaking [*22] authority for MDC. See Mandell v. County of Suffolk,, 316 F.3d 368, 385 ("Here, plaintiff challenges as retaliatory employment decisions made by Gallagher, who, as the Suffolk County police commissioner, had authority to set department-wide personnel policies."); cf. Looby v. City of Hartford, 152 F. Supp. 2d 181, 188 (D.Conn. 2001) (finding no evidence that defendant fire chief had power to create policy with respect to employment decisions); DeLeon v. Little, 981 F. Supp. 728, 741 (D.Conn. 1997) (finding no municipal liability where defendant had "lack of final decision making authority over employment/personnel matters"). George Sparks, the Chief Executive Officers and Chief Operating Officer for MDC, confirms that it is the Board that has the policymaking authority. "The District Board is responsible for the development and implementation of policy concerning personnel matters." Sparks Aff. Def.'s Addendum to Rule 9(c) Stat. [Dkt. No. 64] P 9.

The defendants argue that, because Johnson, Roughan, LeBlanc, McAuliffe, and Fiorentino are not members of the board, and because all personnel policy must be authorized by the board, MDC can not be held liable [*23] for the individual actions of any of the named defendants. Id. Despite the defendants' argument that none of the individuals who Richardson alleges were responsible for the discriminatory conduct were in a position of policymaking authority, MDC may nonetheless be liable if the board ratified the discriminatory conduct and the discriminatorily-based personnel recommendations of these individuals. City of St. Louis, 485 U.S. at 127 ("ratification would be chargeable to the municipality because their decision is final").

Taking the facts in the light most favorable to the plaintiff, there is a material issue of fact as to whether the continued harassment by Johnson was ratified by and acquiesced to by the

board. **HN14** The Second Circuit has previously ruled that "a municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials . . . and that 'municipal inaction such as the persistent failure to discipline subordinates who violate [persons'] civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct,'" Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) [*24] (citing Batista v. Rodriguez, , 702 F.2d 393, 397). See also Ricciuti v. N.Y.C. Transit Auth.,, 941 F.2d 119, 123 (policy may be inferred from "evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights"); Turpin v. Mallet, , 619 F.2d 196, 201 ("where senior personnel have knowledge of a pattern of constitutionally offensive acts by their subordinates but fail to take remedial steps, the municipality may be held liable for a subsequent violation if the superior's inaction amounts to deliberate indifference or to tacit authorization of the offensive acts").

The facts presented by Richardson show that she complained about Johnson's conduct, that his supervisors knew of the problem, but that no disciplinary or corrective action was taken. Pl.'s Mem. in Opp'n to Def's Mot. for Summ. J. [Dkt. No. 67] at 3. Richardson also stated that no actions were ever taken by MDC regarding complaints as to Johnson's behavior, and that Johnson "himself told me that because he was Mr. Johnson and that his mother was the commissioner, they were not going to [*25] do shit to him and that I was only making it worse for myself." Id. at 72. Richardson also claims that, after she filed a grievance, MDC refused to hold a hearing or to process her grievance at all. Pl.'s Mem. in Opp'n to Def's Mot. for Summ. J. [Dkt. No. 51] at 33. The MDC Charter specifically states that the board is responsible for investigating any charges brought against any employee, and that the board is responsible for disciplining employees. Charter [Dkt. No. 65] § 2-17 ("The district board shall have power to supervise and investigate all . . . employees . . . and to inquire into any charges preferred against any of the . . . employees . . . ."). Given the facts presented by Richardson detailing the complaint she filed against Johnson, there is a material issue of fact as to whether the board knew of the complaint lodged against Johnson, and whether the board ratified Johnson's conduct by failing to investigate or appropriately discipline him after this formal complaint had been filed.

As evidence that the board ratified the sexual discrimination by Johnson, Richardson cites to the fact that on April 1, 1999, five days after her complaint against Johnson was filed, [*26] she was denied a step-increment. Pl.'s Rule 9(c) Statement [Dkt. No. 54] P 12. She also states that her job responsibilities were reassigned, and that she was denied a previously approved vacation day. Pl's Mem. in Opp'n to Def.'s Mot. for Summ. J. [Dkt. No. 67] at 45 . Richardson argues that "shortly after [she] was forced to file a formal complaint because of Johnson's continued harassment, she was disciplined, suspended without pay, threatened with termination, and ultimately forced to quit her position." Id. at 7. It was Johnson who was responsible for supervising Richardson, and Johnson who also evaluated her performance. Second Am. Compl. [Dkt. No. 15] P 15. It was Johnson's poor evaluations of Richardson which contributed to Richardson's denial of a step increment. Pl.'s Rule 9(c) Statement [Dkt. No. 54] P 5. Richardson has established a material issue of fact that the board had actual or constructive knowledge of Johnson's sexual discrimination, but nevertheless accepted his recommendations as a basis for denying Richardson a step increment. Such knowledge, if proven at trial, would create liability of the board. City of St. Louis, 485 U.S. at 127. [*27]

The MDC by-laws state that all employment decisions, including the salary classification levels of employees, are decided by the board. Def.'s Ex. A [Dkt. No. 65] Part 3 at §§ B3h, B4b. Therefore, taking the facts in the light most favorable to the plaintiff, there is a material issue of fact as to whether the adverse employment actions, such as the decision to deny Richardson pay increases, to suspend her, and to reduce her job responsibilities, were based on Johnson's discriminatorily-based recommendations, and whether the board knew of this basis, but nonetheless ratified his recommendations. St. Louis, 485 U.S. at 127 ("If the

authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").

## V. MOTION TO STRIKE

The plaintiff has also moved to strike the defendants' motion for summary judgment, arguing that the motion was untimely served upon the plaintiff, and that the defendants failed to attach a Local Rule 9(c)(1) statement. **HN15** "A motion to strike is the correct vehicle to challenge materials submitted in connection with a summary judgment **[*28]** motion." Newport Elec., Inc. v. Newport Corp., 157 F. Supp. 2d 202, 208 (D. Conn. 2001). The moving party must be specific in regards to what it is seeking to have striken and must set forth reasons for why the materials should not be considered by the court. E.g., FDIC v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986). A party can make a motion to strike affidavits if they are not made on the basis of personal knowledge. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 643 (2d Cir. 1988). A motion to strike can also be used to challenge documentary evidence that has not been properly authenticated. E.g., Dedyo v. Baker Eng'g N.Y., Inc., 1998 U.S. Dist. LEXIS 132, 1998 WL 9376, at *4 (S.D.N.Y. Jan. 13, 1998). However, "the nonmoving party [need not] produce evidence in a form that would be admissible at trial in order to avoid summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 324-25, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).

The plaintiff's motion to strike is hereby denied. The court does not find that the plaintiff was prejudiced by the defendants' untimely service of their motion upon the plaintiff, nor **[*29]** does the court find that the plaintiff was prejudiced by the defendants' reference to their earlier-filed 9(c)(1) statement. The defendants did file their motion within the time limit set by the court in its ruling on the motion for reconsideration, [Dkt. No. 61], and the plaintiff's request to file her Rule 9(c) statement out of time was granted by the court. [Dkt. No. 66]. Further, the court does not find that the defendants' reference to their earlier filed Rule 9(c) statement was prejudicial to the plaintiff, as the plaintiff had already responded to the defendants' earlier filed statement of facts. [Dkt. No. 54].

## VI. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment [Dkt. No. 62] is DENIED. The plaintiff's motion to strike [Dkt. No. 69] is also DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 23rd day of July, 2003.

_____/s/_____ Janet C. Hall

United States District Judge



Source: Legal > / . . . / > CT Federal District Courts
Terms: name(richardson and metropolitan district commission) and date geq (06/20/2002)  (Edit Search)
View: Full
Date/Time: Sunday, June 20, 2004 - 10:37 PM EDT

About LexisNexis | Terms and Conditions