AGREEMENT

between

COMMUNICATIONS WORKERS OF AMERICA,
AFL-CIO

LOCAL 1103

and

THE CITY OF WEST HAVEN


July 1, 2000 - June 30, 2004

## I N D E X

| ARTICLE | | PAGE NUMBER |
|---|---|---|
| 1 | AGREEMENT | 1 |
| 2 | RECOGNITION | 1 |
| 3 | DEFINITIONS | 1 |
| 4 | UNION SECURITY | 1 |
| 5 | MANAGEMENT RIGHTS | 2 |
| 6 | SENIORITY | 3 |
| 7 | GRIEVANCE PROCEDURE | 3 |
| 8 | ARBITRATION PROCEDURE | 5 |
| 9 | SICK LEAVE | 6 |
| 10 | MILITARY LEAVE | 8 |
| 11 | JURY DUTY | 9 |
| 12 | BEREAVEMENT LEAVE | 9 |
| 13 | LEAVE OF ABSENCE | 10 |
| 14 | LAYOFF AND RECALL | 10 |
| 15 | PROBATIONARY PERIOD | 11 |
| 16 | WORK IN HIGHER CLASSIFICATION | 12 |
| 17 | HOLIDAYS | 12 |
| 18 | VACATIONS | 12 |
| 19 | UNION ACTIVITIES | 14 |
| 20 | HOURS OF WORK | 15 |
| 21 | INSURANCE | 17 |
| 22 | CAR ALLOWANCE | 19 |
| 23 | DEDUCTION OF UNION DUES | 19 |
| 24 | LONGEVITY | 19 |
| 25 | EDUCATION ASSISTANCE | 20 |
| 26 | RETIREMENT | 21 |
| 27 | DISCIPLINE/DISCHARGE/DEMOTIONS | 22 |
| 28 | HEALTH AND SAFETY | 23 |
| 29 | JOB CLASSIFICATION | 23 |
| 30 | NON-DISCRIMINATION | 24 |
| 31 | BULLETIN BOARDS | 24 |
| 32 | DISTRIBUTION OF CONTRACT | 24 |

33        DURATION OF AGREEMENT ................. 24
34        WAGES ................................. 25
35        PERSONAL DAY .......................... 25
36        PAYMENT FOR ON-THE-JOB INJURY ......... 25
37        JOB POSTING-BIDDING-PROMOTIONS ........ 26
38        SHIFT DIFFERENTIAL .................... 26
39        RESIDENCY ............................. 26
40        MISCELLANEOUS ......................... 26
41        PRIOR PRACTICE ........................ 27
          SIGNATURE PAGE . . . . . . . . . . .  28
APPENDIX A  MEMORANDA OF AGREEMENT ............... 29
APPENDIX B  SALARY SCHEDULES ..................... 33
APPENDIX C  RETURN TO WORK PROGRAM . . . . . . .  45

## ARTICLE 1
## AGREEMENT

This Agreement is between the City of West Haven (hereinafter referred to as the Employer) and the Communications Workers of America, AFL-CIO (hereinafter referred to as the Union).

## ARTICLE 2
## RECOGNITION

The Employer hereby recognizes the Union as the exclusive collective bargaining representative for the purpose of collective bargaining with respect to wages, hours, and other conditions of employment for all the employees included in the collective bargaining unit certified by the State of Connecticut Labor Department in Case No. ME-6545, dated June 15, 1981.

## ARTICLE 3
## DEFINITIONS

The terms hereinafter set forth shall have the following meanings:

1. "Union" shall mean the Communications Workers of America, AFL-CIO.

2. "Employer" shall mean the City of West Haven.

3. "Employee" shall mean a member of the bargaining unit represented the Union.

4. "Regular full-time employee" shall mean an employee normally scheduled to work at least a five (5) day week totaling at least thirty-five (35) hours.

5. "Part-time employee" shall mean an employee normally scheduled to work less than a five (5) day week totaling less than thirty-five (35) but at least twenty (20) hours.

## ARTICLE 4
## UNION SECURITY

Section 1. As a condition of employment, all present employees covered by this Agreement shall either become and remain members of the Union in good standing, or in lieu thereof, pay a fee equal to the dues of the Union Local.

1

All future employees shall be required to either become and remain members commencing the first full pay period following one (1) month after being employed or appointed, or, in lieu thereof, pay a fee equal to the dues of the Union Local.

<u>Section 2</u>.  Employees who fail to comply with this requirement after Union request shall be discharged by the employer within thirty (30) days after receipt of written notice to the Employer.

### ARTICLE 5
### MANAGEMENT RIGHTS

Except where such rights, powers and authority are specifically relinquished, abridged or otherwise limited by the provisions of this Agreement, the City has and will continue to retain, whether exercised or not, the sole and unquestioned responsibility and prerogative to manage the affairs of the City and direct the work force, including but not limited to the following:

(a)  To determine the care, maintenance and operation of City equipment and property.

(b)  To establish or continue policies, practices and procedures for the conduct of City business and, from time to time, to change or abolish such policies, practices or procedures.

(c)  To discontinue processes or operations or to discontinue their performance by employees.

(d)  To select and to determine the number and types of employees required to perform the City's operations.

(e)  To lay off, furlough or otherwise relieve employees from duty for lack of work or other legitimate reasons.

(f)  To prescribe and enforce reasonable work rules provided such rules are made known in a reasonable manner to the employees affected by them.

(g)  To create job descriptions and revise existing job descriptions as deemed necessary provided that the City shall provide the Union with thirty (30) days advance written notice of its intention to revise job descriptions or create new job descriptions during which the Union may request to discuss such

changes prior to implementation.  Upon request the
City shall bargain with the Union concerning the
impact which any significant change in job
descriptions may have on employees' wages, hours
and other terms and conditions of employment.

(h)  To establish contracts or subcontracts for the
City's operations.  The City shall have the right
to subcontract any aspect of the City's operations.

(i)  To transfer or reassign employees wherever the
City's needs require.

### ARTICLE 6
### SENIORITY

Section 1.  Seniority as used in this Article shall mean the
original date of hire and shall be used for the purpose of
determining vacation selections, promotions, transfers,
layoff, recall and longevity.

Section 2.  Original date of hire shall include all service
to the City as a regular full-time employee, provided any
break in service has not exceeded one (1) year.  If a person
is subsequently rehired he/she shall, after a period of four
years (4) of continuous service, be given credit for his/her
previous service less the time of his/her absence for the
purpose of determining vacation, longevity and retirement
only.  An employee fired for just cause and subsequently
rehired shall not receive credit for service prior to
dismissal for just cause.

Section 3.  Part-time employees shall be entitled to all
benefits provided for in this Agreement.

Section 4.  Any part-time employee employed by any other City
agency, including the Board of Education, shall not be
entitled to benefits under this Agreement if it causes
duplication of said benefits.

### ARTICLE 7
### GRIEVANCE PROCEDURE

Section 1.  The purpose of the grievance procedure shall be
to settle employee grievances on as low an administrative
level as possible in order to expedite the settlement of the
grievances.

<u>Section 2</u>.  A grievance, for purposes of this procedure, shall be considered to be an employee or Union complaint concerned with matters contained in this Agreement dealing specifically with:

    a)   discharge, suspension or other disciplinary action;

    b)   matters relative to interpretation and application of the articles and sections of this Agreement.

<u>Section 3</u>.  Any dispute or grievance shall be handled as follows:

<u>STEP 1</u> &ndash;  The aggrieved employee with his/her Union representative shall state in writing the facts and events giving rise to the grievance either within ten (10) working days of the day they occur or ten (10) working days of the time knowledge of such facts or events could, with reasonable diligence, have been ascertained, and submit the statement to the department head, or, if the Mayor shall designate someone other than the department head to receive a grievance, to the person so designated. The person to whom the grievance is submitted will use his/her best efforts to settle the dispute and give his/her answer in writing within five (5) working days.  The written grievance shall specify exactly what section of the Agreement is violated and the remedy sought.

<u>STEP 2</u> &ndash;  In the event the grievance is not adjusted to the satisfaction of the aggrieved, or the employer, the employee and his/her Union representative or the employer shall within ten (10) working days submit the grievance in writing to the Director of Labor Relations and Personnel.  Within ten (10) working days from the date of receipt of said grievance, the Director of Labor Relations and Personnel or his/her designee shall convene a meeting for the purpose of reviewing all of the facts germane to the grievance.  Invited to the meeting shall be the grievant, and/or his/her designated representative, and other such persons as may be necessary for the equitable disposition of such grievance.  The Director of Labor Relations and Personnel or his/her designee shall render a written decision within five (5) working days subsequent to the date of the meeting.

STEP 3 -  In the event the grievance is not adjusted to the
          satisfaction of the Union at the conclusion of Step
          2, then the Union may within thirty (30) days
          thereafter submit the dispute to arbitration in
          accordance with Article 8.

Section 4.  Time limits provided herein may be extended by
written agreement of the parties.

Section 5.  Any individual employee may present a grievance
to his/her employer at Steps 1 and 2 of the grievance
procedure and have the grievance adjusted, without
intervention of the Union, provided the employee first gives
notification in writing, to the Union with a copy to the
Director of Labor Relations and Personnel, and the adjustment
shall not be inconsistent with the terms of the collective
bargaining agreement.  The Union shall be given prompt notice
of the adjustment from the Employer.  Under no circumstances
may an individual employee grievance be processed to
arbitration; only the Union shall have the right to file for
arbitration of a grievance.

## ARTICLE 8
## ARBITRATION PROCEDURE

Section 1.  In the event the Employer and the Union fail to
settle a grievance which has been properly processed through
the grievance procedure provided herein, the Union and only
the Union may, within thirty (30) calendar days after
receiving the Employer's Step 2 answer, and with written
notice to the Employer, submit the grievance to arbitration.
Within thirty (30) days of receipt of a notice of
arbitration, the parties shall attempt to agree upon the
selection of an arbitrator in those cases where the parties
have agreed to either expedited arbitration under the rules
of the State Board of Mediation and Arbitration or the use of
a single arbitrator under said rules or by mutual selection.
In cases other than those involving expedited arbitration or
a single arbitrator, the Union may submit the grievance to
the Connecticut State Board of Mediation and Arbitration in
accordance with its rules.  The submission shall specify the
issue raised by the grievance, the nature of the grievance
and the award requested.

Said Board shall hear and act on such dispute in accordance
with its rules and render a decision which shall be final and
binding on all parties.  In the event such dispute involves
disciplinary action, the Board of Mediation and Arbitration
will have the power to uphold the action of the City or to
rescind or modify such action, and such powers shall include,

but shall not be limited to the right to reinstate a
suspended or discharged employee with full back pay.

<u>Section 2</u>.  The jurisdiction and authority of the arbitrator
and his/her award shall be confined to the interpretation of
the provision or provisions of this Agreement in dispute
between the Union and the Employer.  The arbitrator shall
have no authority to modify, amend, revise, add to or
subtract from any of the terms of this Agreement.

<u>Section 3</u>.  The award of the arbitrator shall be final and
binding upon all parties to this Agreement.

<u>Section 4</u>.  Expenses of arbitration, including the fees and
expenses of the arbitrator, shall be borne and divided
equally between the Employer and the Union.

## ARTICLE 9
## SICK LEAVE

<u>Section 1</u>.  Sick leave as used in this Agreement is defined
as absence from work as result of a bona fide illness or
injury.  If the City can prove that an employee out on sick
leave does not have a bona fide illness, that employee shall
forfeit his sick pay.

<u>Section 2</u>.  Earned sick leave shall accrue at the rate of one
day per month.  Sick leave may accumulate to a total of
ninety (90) days maximum.

Current employees having, as of the date of the signing of
this Agreement, sick leave accumulation in excess of ninety
(90) days will also have a maximum accumulation of ninety
(90) days; however, any employee having accumulated sick
leave above the ninety (90) days as of such date shall have
such excess sick leave, up to a maximum of sixty (60) days,
placed, on a one time basis, in a "sick leave reserve" in
his/her name.  The employee shall have access to any days in
his/her sick leave reserve in the event that he/she has
exhausted his/her accumulated sick time.

The City shall establish, provide and pay for a group long-
term disability income program for employees from a company
of the City's choosing, which policy shall commence benefits
after ninety (90) days of continuous non occupational related
illness or disability.  It shall contain the following
provisions:

6

- replacement wages of 66 2/3% of wages based on wage rate at onset of sickness or injury with a Social Security Disability offset.

- benefit shall continue through age 65 if employee continues to meet the plan's eligibility criteria.

- new hires shall be eligible after completion of the probationary period.

While an employee is receiving benefits under the long-term disability income program, the following shall apply:

a.   Medical and dental benefits shall continue on the same basis as in effect prior to the start of the leave, for a maximum of eighteen (18) months.

b.   The employee will not be eligible for holiday pay, vacation accrual, use of vacation, sick leave accrual or use of sick.

c.   An employee who earned a longevity payment on his/her anniversary date but is on leave when the December longevity payments are issued shall receive the previously earned longevity payment.

Section 3.  An employee who is out as a result of a bona fide sick day shall be paid at his weekly rate of pay computed by dividing his salary by the length of his normal work week.

Section 4.  In the event of any indication of abuse of sick leave privileges, the Employer may require a statement from an attending physician or a physician selected by the City, as the City may determine.  If, however, the employee disagrees with the City's choice, then forthwith the City's selected physician and the employee's physician shall choose a physician to conduct said examination.

Section 5.  In the event of the death of a permanent employee his/her dependent survivors or estate shall receive his/her normal weekly wage for four (4) consecutive weeks.  If the employee has accumulated sick leave and reserve totaling more than four (4) weeks pay, the survivor or estate shall receive the balance of his/her accumulated sick leave and reserve in a lump sum.

Section 6. Any employee upon retirement with a minimum of twenty (20) consecutive years of service to the City, shall be paid for one hundred percent (100%) of all accumulated sick leave.  In addition to this amount, such employee

retiring with a minimum of twenty (20) years of service shall receive fifty percent (50%) of any days remaining in his/her sick leave reserve.

Section 7.  Any employee covered by this agreement who has a term of employment of seven (7) or more years with the City and leaves the employment of the City of West Haven as a result of layoff shall be re-employed for fifty percent (50%) of his/her unused sick leave, up to a maximum sick leave payout of forty-five (45) days, following the expiration of the recall period of two (2) years.  In the event that the employee is recalled and is re-employed by the City or rejects a recall if it falls within his/her classification or shift from which he/she was removed, he/she will not be eligible for any reimbursement of his/her unused sick leave.

Section 8.  The Employer shall make available to each employee who desires the information a current schedule of accumulated sick leave upon reasonable notice in advance and in writing.

Section 9.  Sick leave can be used to care for an employee's sick spouse or child, to a maximum of twenty (20) days per fiscal year.  An employee who has no paid sick leave or vacation days available, or who needs more than the twenty (20) days of paid sick leave,  shall be granted unpaid sick leave sufficient to provide the care necessary for such family member, in accordance with the Family and Medical Leave Act.  The Employer reserves the right to require medical documentation to substantiate and verify an employee's use of paid or unpaid sick leave used for family care.

Section 10. Any employee shall have the right to transfer a maximum of forty five (45) days from his/her accumulated sick leave or vacation time to another employee, if the recipient employee is out due to a prolonged sickness or injury and has exhausted his/her accumulated sick leave and vacation. "Prolonged sickness or injury" shall include cases of intermittent absence due to serious illness (e.g., cancer, AIDS, heart disease, pregnancy) provided the absence is authorized in writing by the attending physician.  This Article does not apply to employees who are terminating their employment with the City.


## ARTICLE 10
## MILITARY LEAVE

Section 1.  A regular employee who is called into active military service shall be given an unpaid leave of absence

for such mandatory period of service and will be reinstated in accordance with applicable statutes in effect on the date of his/her application for reinstatement if said application is filed within thirty (30) days of his/her release from duty.

Section 2. An employee who is a member of the National or Air Guard, or a reserve component of the Armed Forces, will be granted absence when ordered to duty for annual training or emergency service, and for such time lost from his/her scheduled work week, paid the difference between his/her regular rate of pay for a maximum period of two (2) weeks per calendar year, computed on the basis of his/her normal work week, and all of the pay and allowances received for such military duty. Presentation of completed orders bearing an endorsement showing all payments received will be required before reimbursement.

## ARTICLE 11
## JURY DUTY

Section 1. If an employee is called for jury duty, the Employer will compensate him/her for the difference between the payment received for jury duty and the payment he/she would have received for the hours he/she was required to lose from his/her regular work schedule. This compensation shall not exceed five (5) days per week computed at the employee's regular rate and shall not exceed one month's duration. Payment shall be made upon presentation of documentary proof of jury duty and the payment received. Extension of the aforementioned duration may be granted upon request for same. An employee may not volunteer for jury duty.

Section 2. Any pay received for this duty will be set-off against the employee's pay. The language of this Section will also hold true for those employees who are subpoenaed as witnesses and, in turn, will not cover those that become witnesses on a voluntary basis. The check for jury duty must be endorsed in blank and turned over to the Employer as soon as it is received by the employee.

## ARTICLE 12
## BEREAVEMENT LEAVE

Section 1. In the event of a death in the employee's immediate family (spouse, parent, child, step-child, mother-in-law, father-in-law, brother, sister, grandchild), an

employee will be permitted up to five (5) working days off at his/her regular rate of pay for the purpose of attending the funeral and providing for matters incident to the death. Additional time off shall be at the sole discretion of the employer and handled on a case-by-case basis depending on the circumstances.

Section 2.  A three (3) day special leave (the day before the funeral, the day of the funeral, and the day after the funeral) shall be granted for the death of the following individuals:  grandmother, grandfather, step-mother, step-father, aunt, uncle, niece, nephew, brother-in-law or sister-in-law.  Additional time off shall be at the sole discretion of the Employer and handled on a case-by-case basis depending upon the circumstances.

## ARTICLE 13
## LEAVE OF ABSENCE

Section 1.  An employee may apply for and may be granted a leave of absence, without a break in his/her seniority, for a period up to one (1) year.  An employee who is receiving benefits under the long-term disability income program of Article 9 shall be treated in the same manner as an employee on a leave of absence without pay for seniority purposes.

Section 2.  All leaves of absence shall be without pay or benefits.

Section 3.  Any employee found working another job while on leave of absence shall be terminated from the City.

Section 4.  No leave of absence shall be granted without the approval of the Mayor or his/her designee in the exercise of their discretion, which shall not be unreasonably withheld.

## ARTICLE 14
## LAYOFF AND RECALL

Section 1.  In the event of layoffs, phasing out of jobs, abolishment of jobs, there shall be bargaining unit bumping privileges.  All bumps must be a lateral or lower classification.

Section 2.  The Employer shall give employees affected at least two (2) weeks advance notice of layoff or wages in lieu thereof.

Section 3. Employees on recall shall be recalled in inverse order of layoff. All employees shall have recall rights for a period of two (2) years after layoff.

Section 4. Any employee on layoff shall be offered reemployment prior to the City hiring new employees provided said employee has the qualifications and ability to perform the duties of the vacant position.

Section 5. The right of an employee to return to work upon recall shall be forfeited if not exercised within seven (7) working days of notification which shall be deemed given on the postmarked date when sent by registered or certified mail to the last known address of the employee on file in the City's personnel office.

Section 6. An employee shall have the right to refuse an offer of recall for a position the employee has not previously performed without loss of recall rights. If an employee accepts such a position, he/she shall have sixty (60) working days to qualify for the position. If at the end of the sixty (60) day period or at any time during the period, the Employer shall determine that the employee is unqualified, they may terminate the employee. Neither the employee nor the Union may contest the termination through the grievance procedure. However, the employee shall retain the balance of any recall rights.

Section 7. The Employer may make the determination as to the qualifications of persons on layoff for hiring to vacant or new positions.

## ARTICLE 15
## PROBATIONARY PERIOD

A new or rehired employee shall be on probation for sixty (60) working days from the date of hire or rehire. Any period of absence during the probationary period which is in excess of five (5) working days shall not be counted toward completion of the probationary period. Further, a probationary period may be extended by mutual agreement of the Union and the Director of Personnel and Labor Relations. During the probationary period of any such employee, the City may terminate the employment of such employee for any reason without recourse to the grievance procedure. However, said employee or the Union may discuss said termination with the Director of Labor Relations and Personnel if they so desire. This Article 15 shall not apply to persons recalled under Article 14.

## ARTICLE 16
## WORK IN HIGHER CLASSIFICATION

Section 1.  If an employee, due to another employee's illness, vacation, jury duty, or a leave, is assigned to a position paying a higher salary for a period in excess of thirty (30) continuous working days, that employee shall receive the higher of the two rates after thirty (30) days.

Section 2.  Assignment to such a position due to another employee's termination, resignation or death shall be paid at the higher rate from the first day of such assignment.

## ARTICLE 17
## HOLIDAYS

Section 1.  The following holidays shall be observed as days off with pay:

| | |
|---|---|
| New Year's Day | Labor Day |
| Martin Luther King Day | Columbus Day |
| Lincoln's Birthday | Veterans' Day |
| Washington's Birthday | Thanksgiving Day |
| Good Friday | Day after Thanksgiving |
| Memorial Day | Christmas Day |
| Independence Day | |

Section 2.  The Employer shall pay each employee for each designated holiday their rate of pay, computed by dividing his/her weekly salary by the length of his/her normal work week.

Section 3.  When a holiday falls on a Sunday except Easter, the following Monday shall be observed as the holiday.  When a holiday falls on a Saturday, it shall be observed as an extra day of vacation.

## ARTICLE 18
## VACATIONS

Section 1.  The following vacation schedule shall be in effect for employees of the bargaining unit:

a.  Each employee who has completed six (6) months of service but less than one (1) year shall be entitled to a vacation with pay of one week.  In the event however, that an employee received one week of vacation after his/her first six (6) months of service, he/she shall be

entitled to only one additional week of vacation on his/her first anniversary date.

b.   Employees who have completed one (1) year of service shall be entitled a vacation with pay of two (2) weeks annually (ten (10) working days).

c.   Employees who have completed five (5) years of service shall be entitled to a vacation with pay of three (3) weeks annually (fifteen (15) working days).

d.   Employees who have completed ten (10) years of service shall be entitled to a vacation with pay of four (4) weeks annually (twenty (20) working days).

e.   Employees who have completed fifteen (15) years of service shall be entitled to a vacation with pay of five (5) weeks (twenty-five (25) working days) annually provided that employees who have completed twenty (20) years of service or more as of July 1, 1994, shall continue to be entitled to a vacation with pay of six (6) weeks annually.

f.   Vacations shall be taken during the year following the year in which they are earned.  Vacations shall not be accumulated from one year to another.

g.   Vacations shall be scheduled in January of each year. Such scheduling shall be at the mutual agreement of the employee and the department head.  No more than three weeks shall be taken consecutively without prior written approval of the Mayor or his/her designee, which approval shall not be unreasonably withheld.

Section 2.  An extra holiday will be granted as an additional day of vacation to be taken either the day before or the day after the regular vacation, whichever is agreed to by the department head.

Section 3.  An employee who becomes seriously ill or injured while scheduled to go on vacation or is on vacation shall have the opportunity to change his/her vacation schedule provided that sufficient evidence by way of a physician's certificate attesting to his/her bona fide illness is furnished to the department head.

Section 4.  In the event of the resignation, layoff, termination or death of an employee, he/she shall receive any accumulated earned vacation pay due him/her; or in the case of death, his/her survivor or estate shall receive this payment.

Section 5. An employee who does not use his/her annual vacation entitlement by his/her anniversary date may elect to receive one hundred percent (100%) payment for up to five (5) unused vacation days. An employee wishing to buy back vacation time must submit an application prior to his/her anniversary date, to the Director of Personnel and Labor Relations.

## ARTICLE 19
## UNION ACTIVITIES

Section 1. The six (6) stewards shall be allowed to attend official Union conferences not to exceed two hundred (200) hours total time collectively by such stewards without loss of pay during each year of this Agreement.

Section 2. No more than five (5) employees as designated by the Union shall be allowed the necessary time off without loss of pay for the purpose of contract negotiations; no more than one from any single department.

Section 3. In all of the above, reasonable prior notification of said leave shall be given to the Director of Labor Relations and Personnel and in any case shall not seriously disrupt the operation of the department from which the person has requested time off.

Section 4. The Local's Secretary/Treasurer shall advise the Director of Personnel and Labor Relations, in writing, of the identity of all Union stewards.

Section 5. Leave for Union Business.

    1.    To the extent that the Employer determines that the requirements of service permit, employees who are authorized representatives of the Union will be excused on leave of absence without pay to attend to the business of the union.

    2.    There shall be two types of leaves of absence for union business -- short-term leave which shall be for five (5) consecutive work days or less and long-term leave which shall be for periods of not less than one (1) year and shall not exceed five (5) years.

    3.    A maximum of one (1) employee, who is an authorized representative of the union, shall be allowed on each type of leave at one time.

14

4.    The Union shall make all requests for leaves of absence as far in advance as possible and the Employer shall act promptly upon each request.

5.    A Union representative on a short-term leave shall suffer no loss of benefits or seniority while on leave and, upon returning from a short-term leave, shall be returned to the position held prior to the leave.

6.    A Union representative on a long-term leave shall neither enjoy nor accrue any benefits while on leave and his/her position shall not be held. However, time spent on such leave, not to exceed five years, may be counted toward years of service for eligibility for retirement under Article 25 of the collective bargaining; no Employer contribution shall be made to the pension plan for the employee on leave during the period of leave. Upon conclusion of the leave, the individual may apply for any vacant position with the City but shall not have seniority or other preferential rights to said vacancy. In the event that the individual is re-employed by the City within a reasonable period following the leave, his/her seniority prior to the leave shall be restored and bridged.

7.    During a long-term leave of absence, the individual on leave may continue to participate in the Employer's group health insurance plan by paying the full cost of such participation.

## ARTICLE 20
## HOURS OF WORK

Section 1. Regular hours of employment for non-office employees shall be forty (40) hours per week, to the best of the City's ability divided equally over a five (5) consecutive working day period consisting of eight (8) hours per day, normally Monday through Friday. Jobs of a seven (7) day nature shall be programmed for five (5) consecutive days. Overtime hours shall be paid at time and one half of the employee's rate for hours worked in excess of forty (40) in a work week.

Section 2. The working hours for office employees shall be normally thirty-five (35) hours per week equally distributed over five (5) working days with the normal work day commencing at 9:00 a.m. and ending at 5:00 p.m. Employees

working over thirty-five (35) hours shall be compensated at one and one-half (1½) hours of compensatory time for each hour worked.  All employees working over forty (40) hours shall be paid at time and a half (1½) of the appropriate rate.  Compensatory time earned in this manner must be taken within four (4) months from the date earned, unless written approval for other scheduling is granted by the Personnel Director.  Such approval shall not be unreasonably withheld.

Section 3.  All overtime must be authorized in advance by the Mayor or his/her designee.

Section 4.  If any provision of this Article contravenes state or federal law, then to the extent it so contravenes it, the law and not this Article shall prevail.

Section 5.  In cases of emergency or acts of God, the Employer, upon reasonable notice shall be entitled to vary the affected employee's normal workday from his/her regular hours of employment to other hours so designated during the period of such emergency.

Section 6.  Any employee called back to work after completing his/her normal day of work shall be granted a minimum of three (3) hours of work at the appropriate rate.  Employees on call back will remain on the job until it has been completed.

Section 7.  If an employee is required to work on Sunday, he/she shall be compensated at double time.

Section 8.  If an employee is required to work on a holiday he/she shall be compensated at two and one half (2½) times the day's pay in addition to the holiday pay.

Section 9.  Overtime records on each employee shall be maintained to assure distribution of overtime to be issued as equally as possible within the department.

Section 10.  Whenever possible, other than emergencies, overtime assignments shall be made known in advance by the employee's supervisor.

Section 11.  Employees refusing overtime assignments shall be charged with hours worked on an overtime basis in computing the overtime records.

## ARTICLE 21
### INSURANCE

Section 1.  The City shall provide the following health
benefit plans for eligible employees and, unless otherwise
provided, for their eligible dependents (which shall include
an eligible employee's spouse and unmarried dependents up to
age 25):

1.    A Blue Cross Century Preferred Point of Service
      Plan.  The Plan shall provide a network of
      participating providers and facilities which shall
      include Yale-New Haven and St. Raphael's Hospital,
      subject to the following:

      a.    In-Network Benefit Copayments:

            • General office visits:          $5
            • Walk-ins/allergy testing:       $5
            • Wellness and preventive:        $0
            • DME and prosthetics:            $100
            • Emergency Room:                 $25
            • Out-patient MI/ND/SA:           $25

      b.    Combined In-Network and Out-of-Network
            Frequency Limits:

            • In-patient MI/ND:               120 days
            • In-patient SA:                  45 days
            • Out-patient MI/ND:              30 visits
            • Out-patient SA:                 30 visits
            • Home health/hospice:            200 visits

      c.    Out-of-Network Benefits (on a non-emergency
            basis) shall be subject to the following
            coinsurance and deductibles and shall be paid
            up to the limits of reasonable and customary
            charges (90th percentile):

            • Annual deductible:              $200/400
            • Coinsurance rate:               80/20%
            • Coinsurance maximum:            $2,500
                                              covered
                                              expenses
            • Coinsurance cap:                $500/1,000
            • Personal out-of-pocket
              maximum for covered
              services:                       $700/1,400

      d.    The following Managed Care provisions shall be
            included:

17

Case management, pre-admission notification, managed mandatory second surgical opinion. Also, there shall be a $500 penalty for each occurrence which does not comply with the Managed Care requirements.

e.    The Plan shall include in-network treatment for eligible employees and eligible dependents residing outside of Connecticut.

f.    The Plan shall include a Managed Care network of participating pharmacies and the following copayments shall be in effect:

- Mail order:                      $0
- Retail generic
  (required where available): $3
- Retail brand:                    $6

There shall be a $1,000 per person annual maximum with excess services treated as out-of-network expenses.

2.    Dental benefits, comparable to the former Blue Cross Full Service Dental Plan with Riders A, B, C and D.

3.    Vision care benefits for the employee only, comparable to those of the former Blue Cross Vision Care Rider.

Section 2.  The Blue Care Plan or similar qualified plan shall be offered to all employees covered by this Agreement as an alternative to the Century Preferred Point of Service Plan.  Any additional cost to the City for Blue Care over that payable for the Century Preferred Point of Service Plan shall be the obligation of the employee selecting Blue Care. Such additional cost, if any, shall be deducted from the pay, on a regular, periodic basis, of the employee making the election.  Should the cost to the City for the Blue Care Plan increase during the term of this Agreement, the employee's contribution by payroll deduction, shall reflect such change in cost.  There shall be a limited time period, based on the City's open enrollment period, during which coverage may be switched.

Section 3.  The City shall have the right to change insurance carriers or to self insure provided that employee benefits

are substantially equivalent to the benefits the employee now
has in place and that there shall be no lapse in coverage.

Section 4.  The City shall provide and pay for twenty-five
thousand dollars ($25,000) of life insurance for each
employee.

## ARTICLE 22
## CAR ALLOWANCE

The Employer shall supply vehicles to employees as needed in
their duties for the Employer.

In the event the Employer is unable to furnish cars and the
employee is required to use his/her own car in the course of
employment, then the employee shall receive mileage
reimbursement at the current I.R.S. mileage rate.

As a prerequisite to reimbursement, the Employer may require
the employee to keep such records as the Employer deems
appropriate to substantiate such use.

## ARTICLE 23
## DEDUCTION OF UNION DUES

Section 1.  The Employer agrees to deduct from the weekly
wages of each employee, who so authorizes such deduction, the
amount of weekly Union dues or its equivalent as certified to
the Employer by the Secretary-Treasurer of the Union.

Section 2.  Deduction shall be remitted by the Employer to
the Secretary-Treasurer of the Union by the fifteenth (15th)
of the month following such deduction showing the amount and
the employee from whom such deduction was made.

Section 3.  The Employer's obligation is limited solely to
making such deduction, if amount of wages permit, and such
obligation shall cease at the time the employee is terminated
or laid off for lack of work.

## ARTICLE 24
## LONGEVITY

Section 1. Employees who were hired prior to July 1, 2000
shall receive annual longevity payments as follows:

Employees who have completed five
(5) years of continuous service          $660.00

19

Employees who have completed ten
10) years of continuous service          $710.00

Employees who have completed fifteen
(15) years of continuous service         $760.00

Employees who have completed twenty
(20) years of continuous service         $810.00

Employees who have completed twenty-five
(25) years of continuous service       $860.00

Employees who have completed thirty
(30) years of continuous service         $910.00


Section 2.  Longevity payments shall be made the first week
in December of the calendar year during which the necessary
years of service have been attained and thereafter annually
in accordance with the formula. Said payments shall be in one
lump sum.


## ARTICLE 25
## EDUCATION ASSISTANCE

<u>Section 1</u>.  Eligibility – Applicants for educational
assistance must have at least one year of continuous service
at the time of application.

   a.   All applicants for education assistance must be
        made and approved by the Personnel Director prior
        to the time of registration which approval shall
        not be unreasonably withheld.  Applications not
        made in advance will be rejected.

   b.   Course work for which assistance is being requested
        must be job related, or it must be of such a nature
        as to improve the employee's promotional
        opportunities, or it must be a requirement of a
        college or university degree program which is
        related to the employee's development as a City
        employee.

   c.   Course work must be taken at an appropriately
        recognized and certified educational institution.
        No reimbursement is available under this policy for
        association meetings, conventions, institutional

programs, or other similar forms of extracurricular programs.

Section 2. Reimbursement - The City will reimburse employees for actual allowable expenses incurred to a maximum of $1,500.00 per fiscal year.

1. Allowable expenses include tuition, books, lab fees, registration and fees.

2. In order to be reimbursed, the employee must provide satisfactory evidence of completion of the course with a grade of "B" or higher for undergraduate school courses, or "B" or higher for graduate courses or a marking equivalent, and proof of prior payment.

### ARTICLE 26
### RETIREMENT

Section 1. The normal retirement for employees covered by this Agreement shall be 65 years of age with at least five (5) years of service.

Section 2. Employees covered in this Agreement shall be eligible for early retirement when they attain the age of 50 with at least ten (10) years of service.

Section 3. Except as otherwise provided in Section 11, any employee covered by this Agreement who opts to take retirement as provided under Section 2 shall have full health coverage for his/herself and dependents paid by the Employer until he/she attains the age of 65.

Section 4. Effective July 1, 2000, except as otherwise provided in Section 11, any employee covered by this Agreement who retires under either Section 1, 2 or 7 shall be entitled to $25,000. Life insurance paid in full by the employer.

Section 5. Each bargaining unit employee shall be offered the opportunity of belonging to the City of West Haven's 401 K Pension Plan. Said plan shall not be changed or modified without the concurrence of the membership of Local 1103. Employer's contribution shall be five percent (5%) and the employee's contribution shall be a minimum of two percent (2%) to a maximum of fifteen (15%). Total contributions not to exceed twenty percent (20%).

Section 6.  Except as otherwise provided in Section 11, for
employees retiring on or after July 1, 1974 after attaining
the age of 65, the City will pay the cost of Medicare B
provided the retiree is eligible for Medicare.

Section 7.  Except as otherwise provided in Section 11, any
employee shall have the option of retiring after (20) years
of service with full medical benefits paid by the City for
the employee and dependents up to 65 years of age.

Section 8. Except as otherwise provided in Section 11, all
employees retiring after July 1, 2000 shall receive the Blue
Cross/Blue Shield 65 Supplement Policy (High Option/81 Plan),
or equivalent, for themselves and their spouses, providing
the retiree was married at the time of retirement.  Such
coverage shall be paid for by the Employer.

Section 9.  Upon retirement, employee shall receive any
accumulated earned vacation pay due him/her.

Section 10.  For purposes of determining eligibility for the
benefits in this Article, the total years of service with the
Employer or the total years of participation in the City of
West Haven's Pension Plan, whichever is greater, shall
prevail.

Section 11.  For any employee hired on or after July 1, 1994,
upon retirement, the retiree shall pay any contribution
toward health and/or life insurance which is required of
active employees or such other contribution as may be
required by this Agreement.

## ARTICLE 27
## DISCIPLINE/DISCHARGE/DEMOTIONS

Section 1.  No employee covered by this Agreement who has
completed the probationary period may be disciplined, demoted
or discharged without just cause.

Section 2.  At all disciplinary meetings with employees, the
Employer shall advise the employee of his/her right to have a
Union representative present at the meeting.

## ARTICLE 28
## HEALTH AND SAFETY

Section 1.  The Employer and the Union shall cooperate fully in matters contained in this Agreement having to do with safety, health and sanitary matters affecting the employees.

Section 2.  The Employer shall make available rubber gloves and rubber footwear for all work on sewers, rubbish and foul weather clothing to all employees required to work outside in foul weather.  This equipment shall become the responsibility of the employee.  The City will only issue new equipment when the old equipment is worn out.

Section 3.  Clothing or eyeglasses that are damaged under unusual work related circumstances shall be replaced by the Employer when the employee documents the unusual circumstances and the City determines it was in fact unusual and work related.

Section 4.  The Employer will provide reimbursement to the nurses for purchase of uniforms up to $250 per year.  Such payment shall be reimbursable upon submission of receipts.

Section 5.  Effective upon implementation of the 1996 Agreement, bargaining unit employees who drive City vehicles shall be subject to testing for illegal drugs, controlled substances and alcohol based on a standard of reasonable suspicion.  The observations of two supervisors or managers, one of who shall be outside of the bargaining unit, shall be required to find reasonable suspicion.  The procedures and training provisions of the City's "DOT Drug and Alcohol Testing Policy" shall apply to the testing of employees under this provision, except that the provisions for random testing shall not apply.

## ARTICLE 29
## JOB CLASSIFICATION

Section 1.  Employees who choose to submit a request in writing through the Union for consideration of a salary upgrade due to an increase in job responsibilities and/or salary inequities shall submit said request to the Director of Labor Relations and Personnel.  The final decision of whether the request has merit shall rest solely with the Director of Labor Relations and Personnel and any recommendations, if any, shall be signed off by the Union President prior to implementation.  The decision of the Director of Labor Relations and Personnel shall be in writing with a copy to the local Union steward and the international

staff representative for Local 1103. The Union agrees that this article shall not be abused.

Section 2. The process specified in Section 1 above shall be the only process recognized by the parties to grant salary increases during the life of the contract and shall be followed by employees and Department Heads alike.

## ARTICLE 30
### NON-DISCRIMINATION

Neither the Employer nor the Union shall discriminate against any employee because of race, religion, sex, sexual preference, marital status, age, color, national origin, political affiliation or physical disability.

## ARTICLE 31
### BULLETIN BOARDS

The Employer will permit the use of Bulletin Boards for the posting of notices relating to Union business, provided that a copy of each said notice is forwarded to the Corporation Counsel immediately prior to posting.

## ARTICLE 32
### DISTRIBUTION OF CONTRACT

The cost of printing this Agreement shall be borne by the Employer. Each employee and any new employees shall be given a copy of this Agreement as soon as practicable.

## ARTICLE 33
### DURATION OF AGREEMENT

Section 1. This Agreement shall be effective upon signing with the exception of the wage rates of Article 34 which shall be effective July 1, 2000. This Agreement shall continue in effect until June 30, 2004. Either party may give notice to the other of their intent to negotiate a successor agreement by giving to the other party not less than 180 days or more than 210 days written notice of intention to propose amendments and/or changes prior to the end of the term (June 30, 2004).

Section 2. At a mutually convenient time following the receipt of such notification by either party, a conference

24

shall be held between Employer and the Union Negotiation Committee for the purpose of such amendment, modification, or termination.

### ARTICLE 34
### WAGES

<u>Section 1</u>.  The wages for all employees of the bargaining unit for 2000-2004 shall be in accordance with the wage schedule attached hereto.  This wage schedule reflects an increase of three percent (3%) over the rates in effect on June 30, 2000.

<u>Section 2</u>.  Effective July 1, 2001, all members of the bargaining unit shall receive an increase of three percent (3%) annually.

Effective July 1, 2002, all members of the bargaining unit shall receive an increase of three percent (3%) annually.

Effective July 1, 2003, all members of the bargaining unit shall receive an increase of three percent (3%) annually.

<u>Section 3</u>. All employees hired by the City shall progress one (1) step on the anniversary date of their employment by the City, until such time as the maximum step has been reached.. All employees of the bargaining unit receiving a promotion shall be paid at the top rate of said classification.

### ARTICLE 35
### PERSONAL DAY

Employees covered by this Agreement shall have two (2) personal days, during each year of this Agreement, paid at their regular rate when they are absent due to personal business on a regularly scheduled work day.  These days shall not be accumulative.

### ARTICLE 36
### PAYMENT FOR ON-THE-JOB INJURY

<u>Section 1</u>.  The City agrees to pay the employee on compensation their base weekly salary for a period of four (4) weeks after the date of occupational injury.  It must be understood by the Union that the employee benefiting by this clause shall turn over to the City any money received for this period of compensation benefits.  The purpose of this

clause is not intended to nor shall it inflate the employee's earnings during said compensation period.

Section 2. Any employee found working another job while out on Workers' Compensation shall be terminated from the City.

Section 3. Return to work program – See Appendix C

## ARTICLE 37
### JOB POSTING-BIDDING-PROMOTIONS

Section 1. All job vacancies, existing or newly created, covered by this Agreement shall be posted for a period of five (5) working days. Any employee may apply in writing for the posted job to the Personnel Director during this period.

Section 2. The employee with the most seniority shall be selected providing he/she possesses the qualifications and abilities required as determined by the Employer.

Section 3. An employee selected to fill a vacancy shall be given a thirty (30) working day probationary period in his/her new position. During said thirty (30) working day probationary period the employer can require or the employee can elect to return to his/her former position at his/her former rate of pay providing his/her former position is still vacant.

## ARTICLE 38
### SHIFT DIFFERENTIAL

There shall be a shift differential of $10.00 per week for employees working the second shift normally 4:00 p.m. – 12:00 p.m. midnight.

## ARTICLE 39
### RESIDENCY

Employees within this bargaining unit will not be required to live within the City limits.

## ARTICLE 40
### MISCELLANEOUS

Section 1. Any individual hired into the bargaining unit will have seniority for the purpose of bumping and bidding as

26

of the date they commence working in the bargaining unit.
Their original date of hire will be used for determining
vacation, longevity and retirement.

Section 2. A joint Union/Management Committee of three or
four representatives of each party shall explore and develop
ideas to encourage job knowledge, employee morale,
productivity, quality of work, dependability, judgement,
initiative, cooperation, working relationships, stress
reduction and healthy employees.


### ARTICLE 41
### PRIOR PRACTICE

Section 1.  This Agreement is the entire Agreement between
the parties.  All matters subject to collective bargaining
between the parties have been covered in this Agreement.  All
benefits which bargaining unit employees enjoy are expressly
contained in this Agreement and any benefit or right not
contained herein does not exist.

Section 2.  The only side letters, memoranda of agreement,
amendments and other written or oral agreements or assurances
which will carry over from the prior agreement and will
continue to be effective during the life of this Agreement
are those contained within Appendix A of this Agreement.

IN WITNESS WHEREOF the parties have caused their names to be
signed on this _23rd_ day of _August_, 2000.

CITY OF WEST HAVEN

LOCAL 1103, COMMUNICATIONS
WORKERS OF AMERICA, AFL-CIO

By: _____
H. Richard Borer
Mayor

By: _____
Robert McCracken
President

By: _____
Louis J. Sarno
Representative

By: _____
Ralph DeLucca Jr. Relations
Personnel and Labor

By: _____
Thomas Reilly
Negotiator

By: _____
Henry Szadkowski
Corporation Counsel

By: _____
Ralph Paolillo
Negotiator

By: _____
Alan Olenick
Negotiator

By: _____
James McNulty
Negotiator

By: _____
Ramona Cortese
Negotiator

By: _____
Mark Bisaccia
Negotiator

By: _____
Joseph Montagna
Negotiator

By: _____
Dennis Trainor
International Staff
Representative

28

APPENDIX A

MEMORANDA OF AGREEMENT

AGREEMENT

The City of West Haven, Local 1281 and Jim Hill have come to the following Agreement:

The City agrees to raise Mr. Hill's salary by $5,500.00 annually.

The Union and Mr. Hill agree that this $5,500.00 will be his compensation for all hours he is required to work in excess of his regular work week.

The City, Union and Mr. Hill also agree that if in the future Mr. Hill's position of Director of Planning is found to be non-exempt from the Fair Labor Standards Act, this agreement will become null and void.  If this happens, Mr. Hill's salary will be adjusted accordingly and he will be paid as required by the above Act.

This agreement is effective Monday, October 8, 1990.

Signed this _____ day of _____, 1990.


_____
City of West Haven


_____
Local 1281


_____
CWA Representative


_____
Jim Hill


29

AGREEMENT

The City of West Haven has promoted the employee, Beth A.
Sabo to the position of Commissioner of Human Resources
within the Department of Human Resources.  In connection with
that promotion, the City of West Haven, the said employee,
and CWA Local 1281 agree to the following:

1.   If, for any reason, the City of West Haven or the
     named employee decide she is not suitable for the
     position, the employee will return to her last
     position as Director of Human Resources within the
     Department of Human Resources.

2.   The named employee upon her return to the Human
     Resources Director within Local 1281, shall suffer
     no loss of seniority or benefits that would have
     been due her.

3.   The return of the named employee shall in no way
     harm any other employee's position or pay.

4.   The return of the named employee shall in no way
     cause a layoff within Local 1281.

5.   This agreement shall not constitute a prior
     practice.

Agreed to this _____ day of _____, 1987.


_____    _____    _____
City of West Haven       Employee                 CWA Local 1281

# AGREEMENT

This AGREEMENT made this 13th day of May, 1987 by and between the employer, the City of West Haven (hereinafter referred to as 'City'), and the collective bargaining unit, Communication Workers of America, Local 1281 (hereinafter referred to as 'Union').

## WITNESSETH:

WHEREAS, the parties have entered into a certain collective bargaining agreement effective July 1, 1985 through June 30, 1987, and

WHEREAS, subsequent thereto, the City has begun implementation of a Plan of Reorganization, and

WHEREAS, as part of said Plan, the City desires to hire four Commissioners who shall be responsible to oversee and supervise certain agencies, offices and departments of the City, and

WHEREAS, the Union has objected to the implementation of some parts of said Plan, specifically the creation of two Commissionerships, and

WHEREAS, the Union has filed a prohibitive practice claim with the State of Connecticut Board of Labor Relations, and

WHEREAS, the parties desire to resolve their differences.

NOW THEREFORE, in consideration of the foregoing premises, and the following promises and covenants, the parties hereby agree as follows:

1)    The City shall be entitled to create the positions of Commissioner of Development and Commissioner of Human Services, which positions shall be responsible to oversee and supervise various departments, offices and agencies of the City as assigned to them;

2)    Said positions shall not be included within the collective bargaining agreement, nor included within the collective bargaining unit;

3)    The City agrees to maintain the current positions of Community Development Manager and Director of Human Resources, which positions shall remain so long as the individuals currently employed therein remain in their

respective position; the City shall be under no obligation to fill said positions in the event that either becomes vacant, and nothing herein shall prohibit the removal of the individual, for cause, except that the position cannot be removed for budgetary reasons;

4)    The job description for each position shall be amended as set forth in the Exhibits attached hereto and made a part hereof;

5)    The position of Community Development Manager shall have its base salary adjusted to $35,500.00 effective June 30, 1987; said base salary shall be subject to further adjustment pursuant to any future collective bargaining agreement reached between the parties, including the contemplated agreement to take effect July 1, 1987.

THE CITY OF WEST HAVEN


By_____
    Its


COMMUNICATIONS WORKERS OF AMERICA


By_____
    Its

APPENDIX B

SALARY SCHEDULE
2000-01

| POSITION | STEP I | STEP II | STEP III |
|---|---|---|---|
| ACCOUNTING COORDINATOR | 38,471 | 39,841 | 41,206 |
| ADMINISTRATOR, WPC | 71,644 | 74,030 | 76,420 |
| ADULT DAY CARE CENTER NURSE | 38,306 | 39,934 | 41,562 |
| ADULT DAY CARE OFFICE ASSISTANT | 26,796 | 27.824 | 28,846 |
| ASSESSMENT AUDITOR | 52,163 | 54,240 | 56,320 |
| ASSESSOR | 54,931 | 56,232 | 57,531 |
| ASSISTANT BUILDING OFFICIAL | 44,475 | 45,996 | 47,514 |
| ASSISTANT FINANCE DIRECTOR | 53,499 | 55,344 | 57,189 |
| ASSISTANT PLANNER | 38,998 | 40,559 | 42,131 |
| ASSISTANT PURCHASING AGENT | 42,290 | 43,810 | 45,327 |
| ASSISTANT SUPERINTENDENT HIGHWAY | 42,290 | 43,810 | 45,327 |
| ASSISTANT TO COMMISSIONER | 42,290 | 43,810 | 45,327 |
| ASSISTANT WELFARE DIRECTOR | 41,650 | 42,991 | 44,327 |
| BUILDING OFFICIAL | 53,653 | 55,934 | 58,228 |
| BUILDING SUPERINTENDENT | 47,692 | 49,718 | 51,742 |
| CHIEF SANITARIAN | 45,128 | 47,002 | 48,878 |
| CITY ENGINEER | 71,363 | 74,082 | 76,803 |
| COLLECTOR OF DELINQUENT REVENUE | 40,474 | 42,093 | 43,707 |
| COMMUNITY DEVELOPMENT ASSISTANT | 36,216 | 37,757 | 39,297 |
| COMMUNITY DEVELOPMENT ASST. MANAGER | 51,796 | 53,879 | 55,964 |
| COMMUNITY DEVELOPMENT MANAGER | 62,083 | 64,665 | 67,331 |
| COORDINATOR OF ADULT REC. LEAGUES | 28,843 | 30462 | 32,086 |

| | | | |
|---|---|---|---|
| DATA PROCESSING ADMINISTRATOR | 47,348 | 50,670 | 53,993 |
| DEPUTY ASSESSOR | 38,471 | 39,841 | 41,206 |
| DEPUTY DIRECTOR OF PUBLIC WORKS | 53,108 | 54,829 | 56,551 |
| DIRECTOR ADULT DAY CARE | 46,162 | 48,034 | 49,909 |
| DIRECTOR OF ELDERLY SERVICE | 38,471 | 39,841 | 41,206 |
| DIRECTOR OF HUMAN RESOURCES | 51,707 | 53,326 | 54,944 |
| DIRECTOR OF PARK & RECREATION | 48,885 | 50,961 | 53,041 |
| DIRECTOR OF PUBLIC HEALTH | 59,143 | 60,515 | 61,893 |
| DIRECTOR OF WELFARE | 47,151 | 48,525 | 50,032 |
| ECONOMIC DEVELOPMENT COORDINATOR | 50,074 | 52,202 | 54,331 |
| ELECTRICAL INSPECTOR | 42,921 | 44,748 | 46,571 |
| EXECUTIVE ASST. ADMIN. FINANCE | 46,798 | 48,359 | 49,919 |
| FACILITIES INSPECTOR | 30,241 | 31,800 | 33,360 |
| GRANT COORDINATOR | 46,158 | 48,033 | 49,909 |
| HIGHWAY MAINTENANCE SUPERINTENDENT | 46,158 | 48,033 | 49,909 |
| HOUSING SPECIALIST | 42,302 | 43,810 | 45,327 |
| HUMAN RESOURCE SPECIALIST | 34,970 | 36,256 | 37,547 |
| PARK MAINTENANCE SUPERINTENDENT | 46,461 | 48,184 | 49,909 |
| PLANNING/ZONING DIRECTOR | 66,657 | 68,673 | 70,695 |
| PLUMBING/EXCAVATION INSPECTOR | 42,921 | 44,748 | 46,571 |
| POOL/WATERFRONT SUPERVISOR | 36,235 | 37,459 | 38,760 |
| PROGRAM ASSISTANT | 26,867 | 27,858 | 28,846 |
| PROGRAM COORDINATOR | 35,880 | 37,398 | 38,905 |
| PROGRAM SUPERVISOR ALLINGTOWN SENIORS | 32,214 | 33,278 | 34,341 |
| PROPERTY MAINT/CODE INSPECTOR | 39,271 | 40,642 | 42,006 |
| PUBLIC HEALTH NURSE - 31 HOURS | 33,926 | 35,372 | 36,812 |

| | | | |
|---|---|---|---|
| PUBLIC HEALTH NURSE - FULL TIME | 38,306 | 39,934 | 41,562 |
| P. W. SUPERINTENDENT OF OPERATIONS | 46,461 | 48,184 | 49,909 |
| RECREATIONAL PROGRAM COORDINATOR | 33,696 | 34,868 | 36,039 |
| RINK COORDINATOR | 12,348 | 12,840 | 13,620 |
| RISK MANAGER | 43,677 | 45,239 | 46,798 |
| SANITARIAN/EMPLOYEE ASST. COORD. | 42,662 | 44,171 | 45,678 |
| SANITARIAN | 43,770 | 45,244 | 46,720 |
| SANITARIAN I | 37,676 | 39,185 | 40,693 |
| SOCIAL WORKER - ADC | 36,216 | 37,762 | 39,300 |
| SUPERVISOR HIGHWAY | 35,551 | 37,380 | 39,207 |
| TREE WARDEN | 38,471 | 39,841 | 41,206 |
| VEHICLE MAINTENANCE SUPERINTENDENT | 46,461 | 48,184 | 49,909 |
| YOUTH SERVICE COORDINATOR | 41,886 | 44,927 | 47,962 |
| ZONING ENFORCEMENT OFFICER | 35,784 | 37,547 | 39,308 |

APPENDIX B

SALARY SCHEDULE
2001 - 02

| POSITION | STEP I | STEP II | STEP III |
|---|---|---|---|
| ACCOUNTING COORDINATOR | 39,625 | 41,036 | 42,442 |
| ADMINISTRATOR, WPC | 73,793 | 76,251 | 78,713 |
| ADULT DAY CARE CENTER NURSE | 39,455 | 41,132 | 42,809 |
| ADULT DAY CARE OFFICE ASSISTANT | 27,600 | 28,659 | 29,711 |
| ASSESSMENT AUDITOR | 53,728 | 55,867 | 58,010 |
| ASSESSOR | 56,579 | 57,919 | 59,257 |
| ASSISTANT BUILDING OFFICIAL | 45,809 | 47,376 | 48,939 |
| ASSISTANT FINANCE DIRECTOR | 55,104 | 57,004 | 58,905 |
| ASSISTANT PLANNER | 40,168 | 41,776 | 43,395 |
| ASSISTANT PURCHASING AGENT | 43,559 | 45,124 | 46,687 |
| ASSISTANT SUPERINTENDENT HIGHWAY | 43,559 | 45,124 | 46,687 |
| ASSISTANT TO COMMISSIONER | 43,559 | 45,124 | 46,687 |
| ASSISTANT WELFARE DIRECTOR | 42,900 | 44,281 | 45,657 |
| BUILDING OFFICIAL | 55,263 | 57,612 | 59,975 |
| BUILDING SUPERINTENDENT | 49,123 | 51,210 | 53,294 |
| CHIEF SANITARIAN | 46,482 | 48,412 | 50,344 |
| CITY ENGINEER | 73,504 | 76,304 | 79,107 |
| COLLECTOR OF DELINQUENT REVENUE | 41,688 | 43,356 | 45,018 |
| COMMUNITY DEVELOPMENT ASSISTANT | 37,302 | 38,890 | 40,476 |
| COMMUNITY DEVELOPMENT ASST. MANAGER | 53,350 | 55,495 | 57,643 |
| COMMUNITY DEVELOPMENT MANAGER | 63,945 | 66,605 | 69,351 |
| COORDINATOR OF ADULT REC. LEAGUES | 29,708 | 31,376 | 33,049 |

| | | | |
|---|---|---|---|
| DATA PROCESSING ADMINISTRATOR | 48,768 | 52,190 | 55,613 |
| DEPUTY ASSESSOR | 39,625 | 41,036 | 42,442 |
| DEPUTY DIRECTOR OF PUBLIC WORKS | 54,701 | 56,474 | 58,248 |
| DIRECTOR ADULT DAY CARE | 47,547 | 49,475 | 51,406 |
| DIRECTOR OF ELDERLY SERVICE | 39,625 | 41,036 | 42,442 |
| DIRECTOR OF HUMAN RESOURCES | 53,258 | 54,926 | 56,592 |
| DIRECTOR OF PARK & RECREATION | 50,352 | 52,490 | 54,632 |
| DIRECTOR OF PUBLIC HEALTH | 60,917 | 62,330 | 63,750 |
| DIRECTOR OF WELFARE | 48,566 | 49,981 | 51,533 |
| ECONOMIC DEVELOPMENT COORDINATOR | 51,576 | 53,768 | 55,961 |
| ELECTRICAL INSPECTOR | 44,209 | 46,090 | 47,968 |
| EXECUTIVE ASST. ADMIN. FINANCE | 48,202 | 49,810 | 51,417 |
| FACILITIES INSPECTOR | 31,148 | 32,754 | 34,361 |
| GRANT COORDINATOR | 47,543 | 49,474 | 51,406 |
| HIGHWAY MAINTENANCE SUPERINTENDENT | 47,855 | 49,630 | 51,406 |
| HOUSING SPECIALIST | 43,571 | 45,124 | 46,687 |
| HUMAN RESOURCE SPECIALIST | 36,019 | 37,344 | 38,673 |
| PARK MAINTENANCE SUPERINTENDENT | 47,855 | 49,630 | 51,406 |
| PLANNING/ZONING DIRECTOR | 68.657 | 70,733 | 72,816 |
| PLUMBING/EXCAVATION INSPECTOR | 44,209 | 46,090 | 47,968 |
| POOL/WATERFRONT SUPERVISOR | 37,322 | 38,583 | 39,923 |
| PROGRAM ASSISTANT | 27,673 | 28,694 | 29,711 |
| PROGRAM COORDINATOR | 36,956 | 38,520 | 40,072 |
| PROGRAM SUPERVISOR ALLINGTOWN SENIORS | 33,180 | 34,276 | 35,371 |
| PROPERTY MAINT/CODE INSPECTOR | 40,449 | 41,861 | 43,266 |
| PUBLIC HEALTH NURSE - 31 HOURS | 34,944 | 36,433 | 37,916 |

| | | | |
|---|---|---|---|
| PUBLIC HEALTH NURSE - FULL TIME | 39,455 | 41,132 | 42,809 |
| P. W. SUPERINTENDENT OF OPERATIONS | 47,855 | 49,630 | 51,406 |
| RECREATIONAL PROGRAM COORDINATOR | 34,707 | 35,914 | 37,120 |
| RINK COORDINATOR | 12,718 | 13,225 | 14,029 |
| RISK MANAGER | 44,987 | 46,596 | 48,202 |
| SANITARIAN/EMPLOYEE ASST. COORD. | 43,942 | 45,496 | 47,048 |
| SANITARIAN | 45,083 | 46,601 | 48,122 |
| SANITARIAN I | 38,806 | 40,361 | 41,914 |
| SOCIAL WORKER - ADC | 37,302 | 38,895 | 40,479 |
| SUPERVISOR HIGHWAY | 36,618 | 38,501 | 40,383 |
| TREE WARDEN | 39,625 | 41,036 | 42,442 |
| VEHICLE MAINTENANCE SUPERINTENDENT | 47,855 | 49,630 | 51,406 |
| YOUTH SERVICE COORDINATOR | 43,143 | 46,275 | 49,401 |
| ZONING ENFORCEMENT OFFICER | 36,858 | 38,673 | 40,487 |

APPENDIX B

SALARY SCHEDULE
2002-03

| POSITION | STEP I | STEP II | STEP III |
|---|---|---|---|
| ACCOUNTING COORDINATOR | 40,814 | 42,267 | 43,715 |
| ADMINISTRATOR, WPC | 76,007 | 78,539 | 81,074 |
| ADULT DAY CARE CENTER NURSE | 40,639 | 42,366 | 44,093 |
| ADULT DAY CARE OFFICE ASSISTANT | 28,428 | 29,519 | 30,602 |
| ASSESSMENT AUDITOR | 55,340 | 57,543 | 59,750 |
| ASSESSOR | 58,276 | 59,657 | 61,035 |
| ASSISTANT BUILDING OFFICIAL | 47,183 | 49,797 | 50,407 |
| ASSISTANT FINANCE DIRECTOR | 56,757 | 58,714 | 60,672 |
| ASSISTANT PLANNER | 41,373 | 43,029 | 44,697 |
| ASSISTANT PURCHASING AGENT | 44,866 | 46,478 | 48,088 |
| ASSISTANT SUPERINTENDENT HIGHWAY | 44,866 | 46,478 | 48,088 |
| ASSISTANT TO COMMISSIONER | 44,866 | 46,478 | 48,088 |
| ASSISTANT WELFARE DIRECTOR | 44,187 | 45,609 | 47,027 |
| BUILDING OFFICIAL | 56,921 | 59,340 | 61,774 |
| BUILDING SUPERINTENDENT | 50,597 | 52,746 | 54,893 |
| CHIEF SANITARIAN | 47,876 | 49,864 | 51,854 |
| CITY ENGINEER | 75,709 | 78,593 | 81,480 |
| COLLECTOR OF DELINQUENT REVENUE | 42,939 | 44,657 | 46,369 |
| COMMUNITY DEVELOPMENT ASSISTANT | 38,421 | 40,057 | 41,690 |
| COMMUNITY DEVELOPMENT ASST. MANAGER | 54,951 | 57,160 | 59,372 |
| COMMUNITY DEVELOPMENT MANAGER | 65,863 | 68,603 | 71,432 |

| | | | |
|---|---|---|---|
| COORDINATOR OF ADULT REC. LEAGUES | 30,599 | 32,317 | 34,040 |
| DATA PROCESSING ADMINISTRATOR | 50,231 | 53,756 | 57,281 |
| DEPUTY ASSESSOR | 40,814 | 42,267 | 43,715 |
| DEPUTY DIRECTOR OF PUBLIC WORKS | 56,342 | 58,168 | 59,995 |
| DIRECTOR ADULT DAY CARE | 48,973 | 50,959 | 52,948 |
| DIRECTOR OF ELDERLY SERVICE | 40,814 | 42,267 | 43,715 |
| DIRECTOR OF HUMAN RESOURCES | 54,856 | 56,574 | 58,290 |
| DIRECTOR OF PARK & RECREATION | 51,863 | 54,065 | 56,271 |
| DIRECTOR OF PUBLIC HEALTH | 62,745 | 64,200 | 65,663 |
| DIRECTOR OF WELFARE | 50,023 | 51,480 | 53,079 |
| ECONOMIC DEVELOPMENT COORDINATOR | 53,123 | 55,381 | 57,640 |
| ELECTRICAL INSPECTOR | 45,535 | 47,473 | 49,407 |
| EXECUTIVE ASST. ADMIN. FINANCE | 49,648 | 51,304 | 53,079 |
| FACILITIES INSPECTOR | 32,082 | 33,737 | 35,392 |
| GRANT COORDINATOR | 48,969 | 50,958 | 52,948 |
| HIGHWAY MAINTENANCE SUPERINTENDENT | 49,291 | 51,119 | 52,948 |
| HOUSING SPECIALIST | 44,878 | 46,478 | 48,088 |
| HUMAN RESOURCE SPECIALIST | 37,100 | 38,464 | 39,833 |
| PARK MAINTENANCE SUPERINTENDENT | 49,291 | 51,119 | 52,948 |
| PLANNING/ZONING DIRECTOR | 70.717 | 72.855 | 75,000 |
| PLUMBING/EXCAVATION INSPECTOR | 45,535 | 47,473 | 49,407 |
| POOL/WATERFRONT SUPERVISOR | 38,442 | 39,740 | 41,121 |
| PROGRAM ASSISTANT | 28,503 | 29,555 | 30,602 |
| PROGRAM COORDINATOR | 38,065 | 39,676 | 41,274 |
| PROGRAM SUPERVISOR ALLINGTOWN SENIORS | 34,175 | 35,304 | 36,432 |
| PROPERTY MAINT/CODE INSPECTOR | 41,662 | 43,117 | 44,564 |

| | | | |
|---|---|---|---|
| PUBLIC HEALTH NURSE - 31 HOURS | 35,992 | 37,526 | 39,053 |
| PUBLIC HEALTH NURSE - FULL TIME | 40,639 | 42,366 | 44,093 |
| P. W. SUPERINTENDENT OF OPERATIONS | 49,291 | 51,119 | 52,948 |
| RECREATIONAL PROGRAM COORDINATOR | 35,748 | 36,991 | 38,234 |
| RINK COORDINATOR | 13,100 | 13,622 | 14,450 |
| RISK MANAGER | 46,337 | 47.994 | 49,648 |
| SANITARIAN/EMPLOYEE ASST. COORD. | 45,260 | 46,861 | 48,459 |
| SANITARIAN | 46,435 | 47,999 | 49,566 |
| SANITARIAN I | 39,970 | 41,572 | 43,171 |
| SOCIAL WORKER - ADC | 38,421 | 40,062 | 41,693 |
| SUPERVISOR HIGHWAY | 37,717 | 39,656 | 41,594 |
| TREE WARDEN | 40,814 | 42,267 | 43,715 |
| VEHICLE MAINTENANCE SUPERINTENDENT | 49,291 | 51,119 | 52,948 |
| YOUTH SERVICE COORDINATOR | 44,437 | 47,663 | 50,883 |
| ZONING ENFORCEMENT OFFICER | 37,964 | 39,833 | 41,702 |

APPENDIX B

SALARY SCHEDULE
2003-04

| POSITION | STEP I | STEP II | STEP III |
|---|---|---|---|
| ACCOUNTING COORDINATOR | 42,038 | 43,535 | 45,026 |
| ADMINISTRATOR, WPC | 78,287 | 80,895 | 83,506 |
| ADULT DAY CARE CENTER NURSE | 41,858 | 43,637 | 45,416 |
| ADULT DAY CARE OFFICE ASSISTANT | 29,281 | 30,405 | 31,520 |
| ASSESSMENT AUDITOR | 57,000 | 59,269 | 61,543 |
| ASSESSOR | 60,024 | 61,447 | 62,492 |
| ASSISTANT BUILDING OFFICIAL | 48,598 | 50,261 | 51,919 |
| ASSISTANT FINANCE DIRECTOR | 58,460 | 60,475 | 62,492 |
| ASSISTANT PLANNER | 42,614 | 44,320 | 46,038 |
| ASSISTANT PURCHASING AGENT | 46,212 | 47,872 | 49,531 |
| ASSISTANT SUPERINTENDENT HIGHWAY | 46,212 | 47,872 | 49,531 |
| ASSISTANT TO COMMISSIONER | 46,212 | 47,872 | 49,531 |
| ASSISTANT WELFARE DIRECTOR | 45,513 | 46,977 | 48,438 |
| BUILDING OFFICIAL | 58,629 | 61,120 | 63,627 |
| BUILDING SUPERINTENDENT | 52,115 | 54,328 | 56,540 |
| CHIEF SANITARIAN | 49,312 | 51,360 | 53,140 |
| CITY ENGINEER | 77,980 | 80951 | 83,924 |
| COLLECTOR OF DELINQUENT REVENUE | 44,227 | 45,997 | 47,760 |
| COMMUNITY DEVELOPMENT ASSISTANT | 39,574 | 41,259 | 42,941 |
| COMMUNITY DEVELOPMENT ASST. MANAGER | 56,600 | 58,875 | 61,153 |
| COMMUNITY DEVELOPMENT MANAGER | 67,839 | 70,661 | 73,575 |

42

| | | | |
|---|---|---|---|
| COORDINATOR OF ADULT REC. LEAGUES | 31,517 | 33,287 | 35,061 |
| DATA PROCESSING ADMINISTRATOR | 51,738 | 55,369 | 58,999 |
| DEPUTY ASSESSOR | 42,038 | 43,535 | 45,026 |
| DEPUTY DIRECTOR OF PUBLIC WORKS | 58,032 | 59,913 | 61,795 |
| DIRECTOR ADULT DAY CARE | 50,442 | 52,488 | 54,536 |
| DIRECTOR OF ELDERLY SERVICE | 42,038 | 43,535 | 45,026 |
| DIRECTOR OF HUMAN RESOURCES | 56,502 | 58,271 | 60,039 |
| DIRECTOR OF PARK & RECREATION | 53,419 | 55,687 | 57,959 |
| DIRECTOR OF PUBLIC HEALTH | 64,627 | 66,126 | 67,633 |
| DIRECTOR OF WELFARE | 51,524 | 53,024 | 54,671 |
| ECONOMIC DEVELOPMENT COORDINATOR | 54,717 | 57,042 | 59,369 |
| ELECTRICAL INSPECTOR | 46,901 | 48,897 | 50,889 |
| EXECUTIVE ASST. ADMIN. FINANCE | 51,137 | 52,843 | 54,549 |
| FACILITIES INSPECTOR | 33,044 | 34,749 | 36,454 |
| GRANT COORDINATOR | 50,438 | 52,487 | 54,536 |
| HIGHWAY MAINTENANCE SUPERINTENDENT | 50,770 | 52,653 | 54,536 |
| HOUSING SPECIALIST | 46,224 | 47,872 | 49,531 |
| HUMAN RESOURCE SPECIALIST | 38,213 | 39,618 | 41,028 |
| PARK MAINTENANCE SUPERINTENDENT | 50,770 | 52,653 | 54,536 |
| PLANNING/ZONING DIRECTOR | 72,839 | 75,041 | 77,250 |
| PLUMBING/EXCAVATION INSPECTOR | 46,901 | 48,897 | 50,889 |
| POOL/WATERFRONT SUPERVISOR | 39,595 | 40,932 | 42,355 |
| PROGRAM ASSISTANT | 29,358 | 30,442 | 31,520 |
| PROGRAM COORDINATOR | 39,207 | 40,866 | 42,512 |
| PROGRAM SUPERVISOR ALLINGTOWN SENIORS | 35,200 | 36,363 | 37,525 |
| PROPERTY MAINT/CODE INSPECTOR | 42,912 | 44,411 | 45,901 |

| | | | |
|---|---|---|---|
| PUBLIC HEALTH NURSE - 31 HOURS | 37,072 | 38,652 | 40,255 |
| PUBLIC HEALTH NURSE – FULL TIME | 41,858 | 43,637 | 45,416 |
| P. W. SUPERINTENDENT OF OPERATIONS | 50,770 | 52,653 | 54,536 |
| RECREATIONAL PROGRAM COORDINATOR | 36,820 | 38,101 | 39,381 |
| RINK COORDINATOR | 13,493 | 14,031 | 14,884 |
| RISK MANAGER | 47,727 | 49,434 | 51,137 |
| SANITARIAN/EMPLOYEE ASST. COORD. | 46,618 | 48,267 | 49,913 |
| SANITARIAN | 47,828 | 49,439 | 51,053 |
| SANITARIAN I | 41,169 | 42,819 | 44,466 |
| SOCIAL WORKER - ADC | 39,574 | 41,264 | 42,944 |
| SUPERVISOR HIGHWAY | 38,849 | 40,846 | 42,842 |
| TREE WARDEN | 42,038 | 43,535 | 45,026 |
| VEHICLE MAINTENANCE SUPERINTENDENT | 50,770 | 52,653 | 54,536 |
| YOUTH SERVICE COORDINATOR | 45,770 | 49,093 | 52,409 |
| ZONING ENFORCEMENT OFFICER | 39,103 | 41,028 | 42,953 |

APPENDIX C
RETURN TO WORK PROGRAM

**Back to Work Program**

**POLICY**

Employees of the City of West Haven who are, or could be, on
leave of absence from their duties as a result of a work-
related illness or injury, may be eligible for the Return-to-
Work Program upon written certification from a medical care
provider.   The medical care provider must certify that the
employee may return to work with restrictions on physical
requirements of the job in question, and that those
restrictions are expected to last for more than 15 days.

A restriction identifies a physical condition which prevents
an employee from performing the full scope of his/her job
duties as outlined in their job description.   There are two
types of restrictions: temporary and permanent.   Temporary
restrictions are defined as those limitations placed on an
injured employee by a physician which are of relatively short
duration (i.e. the employee is expected to fully recover and
to return to normal working conditions).

Permanent restrictions are defined as those limitations
placed on an employee by a physician which are expected to be
long term (more than 180 days) or from which recovery is not
expected.   Those employees who fall into this category are
not eligible for participation in the Return-to-Work Program.
They may elect to seek alternative employment, or file for a
"reasonable accommodation" under the Americans with
Disabilities Act.

When an employee is approved for participation in the Return-
to-Work Program, primary consideration will be given to job
placement within the employee's department and normal job
duties.   A secondary consideration will be alternative
placement into another department or another assignment which
is within the same bargaining unit.   A critical
consideration is to place the injured employee in a position
to perform productive work that is useful to the City of West
Haven and achievable within the restrictions placed on the
employee.   Alternative placement will not be used to avoid
the filling of vacancies within the department in question.

An employee participating in the Return-to-Work Program is
subject to all rules, regulations, contractual memoranda of

45

understanding, standards, policies and procedures of the City of West Haven.

Each situation will stand on its own merits.   An Employee Return-to-Work Form, completed by a physician, noting an employee's restrictions, will be evaluated by the Personnel Director in order to determine whether or not an employee is able to return to his/her assigned position.   The Personnel Director will then forward his/her recommendation with appropriate documentation to the injured employee's department head  for final determination.

If an employee is approved for the Return-to-Work Program, he/she shall be provided tasks which fall within the physical restrictions identified by the treating physician.   In no case will an employee authorized to participate in the Return-to-Work Program be placed in an area that will pose a health or safety risk to the City of West Haven's other staff, or the injured employee.

Modified assignments for the following classes of workers shall include, but not be limited to any assignment that falls within the guidelines of the restriction set by the treating physician.

**Return to Work Procedure**

The City of West Haven has instituted a Return-to-Work
Program applicable to full-time employees.    Employees
injured at work are brought to a medical care provider for
initial treatment.    If, after treatment, the employee is
unable to return to work, the employee is referred for
further treatment.    The employee should receive a statement
of any restrictions on duties and an expected return to work
date from the medical care provider.    The employee is
required to provide this information to the City of West
Haven as soon as possible.

If the expected absence from work is longer than three (3)
days, the employee will be given a MODIFIED DUTY PACKAGE to
bring to the medical care provider.    If the employee is
unable to visit his/her medical care provider, the City of
West Haven will mail the MODIFIED DUTY PACKAGE to the medical
care provider for the employee.    The medical care provider
will be requested to complete the evaluation contained in the
MODIFIED DUTY PACKAGE, and return it to the City of West
Haven within five (5) business days of receipt.    The
MODIFIED DUTY PACKAGE includes:

      1.    Doctor's Form - Modified Duty Evaluation
      2.    Current Job Description of Employees
      3.    List of Modified Duty Assignments that are
available

The purpose of the MODIFIED DUTY PACKAGE is to furnish the
medical care provider
with information regarding the present duties of the employee
and available modified duty
tasks.    The response of the medical care provider will be
evaluated.    If the care provider indicates that the employee
is not able to return to his/her regular duties but is
physically able to perform a modified duty assignment, then
the employee will be required to report for modified duty.
Modified duty assignments will, to the extent practical, be
within the same department and be related to the type of work
normally performed by the employee.

Upon receipt of notification from the medical care provider
of the employee's ability to return to modified duty work,
the Director of the Personnel Department will review the
documentation and job availability within the organization.
Personnel will then contact the employee to inform him/her
that he/she has been accepted into the Return-to-Work
Program.    Personnel will discuss a work schedule with the
employee's supervisor.

The Director of Personnel and the supervisor will review the physical restrictions documented by the medical care provider and determine what job duties the employee can perform, as well as establish a work schedule and return to work date.

Modified duty status will be continually monitored by **CIRMAcare** Nurse Case Managers.   Employees will be assigned to the Return-to-Work Program until a physician provides a written release for the employee to return to work at his/her regular position.   A maximum of 90 days in the Program is suggested, but duration may be increased to 180 days if physical restrictions dictate and a satisfactory job performance has been demonstrated.   Under no circumstances should an employee's stay in the Return-to-Work Program exceed 180 days, since Return-to-Work programs are a temporary commendation and not a long-term solution to employee disability.

If the employee refuses to bring the MODIFIED DUTY PACKAGE to the medical care provider, or refuses to authorize the employer to mail it to the medical care provider, or refuses to report for a modified duty assignment, then the employee's workers' compensation records will be forwarded to the Workers' Compensation insurance provider for purpose of requesting an immediate hearing to review the situation.

Employees do not waive any rights to Workers' Compensation benefits by participating in the Return-to-Work Program. Employees participating in the Return-to-Work Program will continue to be covered by the Workers' Compensation Act for all reasonable and
necessary medical expenses and disability benefits related to the injury or illness.