# SUSMAN, DUFFY & SEGALOFF, P.C.

MICHAEL SUSMAN
JAMES H. SEGALOFF
JOSEPH E. FAUGHNAN
LAURA M. SKLAVER
JAMES J. PERITO
MATTHEW C. SUSMAN
THOMAS E. KATON
PETER G. KRUZYNSKI

JENNIFER L. SCHANCUPP
KAREN BALDWIN KRAVETZ
STEPHANIE S. BAIER
JESSE A. LANGER

ATTORNEYS AT LAW
55 WHITNEY AVENUE
NEW HAVEN, CONNECTICUT 06510-1300

PLEASE REPLY TO:
P.O. BOX 1684
NEW HAVEN, CT 06507-1684

(203) 624-9830

FACSIMILE (203) 562-8430

ALLEN H. DUFFY
(1931-1986)

OF COUNSEL
DAVID P. HAMBLETON

August 2, 2004

**Via Federal Express**
Clerk of the Court
United States District Court
District of Connecticut
915 Lafayette Blvd.
Bridgeport, CT 06604

RECEIVED
AUG 2004
United States District Court
District of Connecticut
FILED AT            BRIDGEPORT
8/3/04
Kevin F. Rowe, Clerk
By: [signature]
Deputy Clerk

Re: <u>Thomas Reilly v. City of West Haven</u>, Case No. 3:02 CV1346 (SRU)

Dear Clerk:

On this date, I filed a Memorandum of Law in Support of Defendants' Motion to Strike Materials Submitted in Opposition to Defendants' Motion for Summary Judgment. Certain documents referenced in the memorandum of law as being attached thereto were inadvertently omitted from the memorandum filed with the Court.

Enclosed please find copies of the following omitted documents:
- The "Dear Felicia" column referenced in footnote 1 of the memorandum;
- The unreported decision of <u>United States Football League v. National Football League</u>, 1986 WL 5803 (S.D.N.Y. 1986) referenced on page 3 of the memorandum; and
- An excerpt from the deposition of the Plaintiff referenced on page 5 of the memorandum.

Please accept my apology for any inconvenience caused by this omission.

Very truly yours,

[signature]

Jennifer L. Schancupp

JLS/jls
Enclosures

cc: Gary Phelan, Esq.
    Michael P. Farrell, Esq.

# Dear Felicia

Well sweetie, it's another week, and whot a week it's been. Here we are in the midst of the budget season and things have been percolatin' around here so much, I can jest about keep up with it. There's lots to tell yew about.

I guess the foist thing was the budget hearing. For the foist time in many a moon, there were lotsa speakers, and most o' them talked about education. As yew are aware, hizzoner has cropped the Bored of Education's budget down from 8.2 percent to about four percent....the boys and gurls on the board don't know where to cut, soooo are leavin' it up to the council. They are hopin' to retain about 6 percent, witch is jest the contractual items they have to keep each year.

One of the big sidebars o' the night was when one o' the axed job people got up and spoke. Dearie, I hoid that Sandy LoRusso really gave the council whot fer during her presentation...she let'em know that she's planning to file suit and that she's saved the muncipality a bunch o' kopecks over the years. That ain't gonna fly, sweets. Yew know as well as I do this is jest yore usual nonsense of political retribution — the type that umpteen reformers were gonna stop and didn't. The same type that got Cobina so ticked at the former Democratic leadership.

Iva Lootey was at the high school that evening, and sez that effen the City Council restores her job, yew better be looking fer ice cubes in Hades.

Now, here's the thing that could bring this whole siutation down. Yew know, of course, that Thom Reilly was axed from his job, too. Well, they only got rid o' one inspector, and frum whot Cobina is told did a little finagling here and there to have the work picked up by others...one inspector got rid of...Effen a jury hears that, I wouldn't bet the mortgage the city'd win.

Then, I hear-tell that Timmy Wrightington raised jest a couple o' eyebrows when he brought up hotel bills and other expenses. Frum whot I gather, there were a few who harrumphs at the idea that money is spent in this way. Let's jest say that whotever Timmy's reason, he got the rise outta some people, that he expected.

Whilst we're on the subjeck, Chucky Marino, who was once the finance chairman of the council, got up and pernted out a few interestin' pernts in the budget, and frum whot Iva Lootey could gather, there were many an interested ear in whot he was sayin'. Remember, Chuck knows from whereof he speaks. He'll be dismissed by the thoid floor as a political malcontent, but frum whot Iva wassayin' more than a couple people, including those on the dais were listening.

By the way, Sammy Bluejay, who happened to be perched in the audience was wonderin' how cum the fack that hizzoner admitted that the city's never collected more than 91-point-sumthin' percent each year ain't givin' people pause. Whilst some seemed to raise an eyebrow, most kind've took it in stride. Whot that sez to some is this budget is build on sand and could come tumblin to the ground.

Then we git to Monday night's council confab. Sweetie, Sammy Bluejay sez it was like the old days...things were off the walls. In fack, a few people might've been bouncin' offen them. As yew are aware the new council imposed a five-minute, one-time rule. Speakers during the public session could only get up once and speak for five minutes. Well, things go outta hand the other night.

Bill Canning, nicknamed "Loose" by a few Demmies, frum whot I'm told, axed that the rule be suspended during the budget process so all isshews could be hoid. To make a long story short, things got heated, he ends up in a say-to with Chairman Jimmy Morrissey, in the midst of this Timmy Wrightington gits up and axes fer bills from the corporation counsel and all the lawyers that have been paid.He's gaveled outta order, things got woise, and Morrissey calls a five-minute cooling off period.

Whereupon, when they git back, he doesn't call the public session back into order, he starts the regular meeting...don't be surprised effen an FOI complaint goes through on this caper.

Speakin' o' the council, I guess there is an attempt to git the Police Pension bond on the fast track...an ordinance was sent back to committee Monday night, but only after many queries were asked about the ordinance that had been put on the floor. Sweetie, d'yew know that the $58 million police pension is now $72 million? Talk about inflation!! Why is it up that high? We knew it would be around $65 million cuz that's whot the thoid floor was sayin

with the new year etc. Did somebody fergit to carry a one. Tennyrate, there are many who're lookin' at this thing and the caution was stated that this should be treaded very lightly. Yup, lightly indeed.

I hear-tell also, Nick Pascale, the head of the Young Dems and, admittedly a person not in hizzoner's camp, is askin' that the council bring in state auditors to look at the city's books. This ain't a new idea, sweets, and one that probably should taken seriously. But as with the ice cubes in Hades up above, it ain't gonna happen. Pascale is another that will be dismissed as jest a political hack, but whot he sez has been pernted out by many. Much of the budgeting we're seein' we've seen before...with not the greatest of consequences. Another set of eyes lookin' at the books might set people's minds at ease that things are the way that the thoid floor sez...or they're not. Tennyrate, don't expeck this to go away.

I hear that Pascale might try to git a grassroots effort together to have the city's books audited. Effen he gits the support, it could come about...just cuz of political pressure. Keep yore eyes on this one, it could be very interesting later on.

Remember I was tellyin' yew a coule weeks back about the fack that Gary Broccoli is commutin' in from of all places Killingworth dayily, cuz they haven't posted the statidum job. Well, come to find out, don't expeck that thing to be posted until the entire Bored of Education budget is finalized. The bored is not gonna do anything with it cuz no one is kwite sure how much money is gonna be in the budget, and weather the city goes to a "pay fer play" format fer sports....That ain't on information, sweets, but yew know surer than shootin' the foist thing to be taken outta any skool budget is extra-curriculars. And whot brings out the angry parents fast than that...not a darned thing!

But I digress. There is still the kewing up goin' on fer that job. Only three are in the runnin', and there is a lotta behind the scenes finaglin' goin' on. Everyone is in agreement that there is only one clear choice fer this job, but that don't mean the odds-on favorite is gonna git it. As with everything else hereabouts, the political machinery has to churn before decisions are made.

Yew know sweets, the older Cobina gits the more she thinks of that line from Gilbert and Sullivan's "Mikado" when the topic toins to budgets: "Name youre fiction and I'll sign it." When we really come down to it, methinks there's more creative bookkeeping in budgets than anywhere else.

Tennyrate, there is still talk some jobs might be put on the block as the council weighs in on the budget. Nelly Nuthatch was over in the Actors Colony and was watchin' the way some of the people over there are tryin' to prove their worth and who much their job is needed.

With that bit o' chatter, I'll close this time til next, mitt luff und kizzez,

*Cobina*



**Rose M. Napoli's**
**BODY WAVES**
**HAIR & BODY CARE**
Full Service Salon
TANNING • $25.00
1 Month Unlimited With Student ID
EXPIRES MAY 31, 2002
HAIR STYLING
By Appointment Only. With Tina, Cindi And Erica
"For the Prom"
Up-Do's and Braids
THERAPEUTIC MASSAGE • $1.00 A Minute, 15 Minute Minimum
HOURS: Tues., - Thurs. 10 a.m.-8 p.m.,
Fri. 10 a.m. - 5 p.m., Sat. 9 a.m.-5 p.m.
SAVIN ROCK PLAZA
252 Captain Thomas Blvd., West Haven • 931-7506

**Bee's Gali**
**Bookstore & Art Center**
• New, Used & Free Books
• Art Classes for Children & Adults
• Arts & Crafts Birthday Parties
• Jewelry & Other Gifts
• Pager & Cellular Services
• **99¢ Books • 99¢ Art Classes**
All art materials provided.
Call for class date & time.
(classes for children, youth, adults & seniors)
Just Bring This Ad To:
108 Campbell Ave. West Haven, CT 06516
934-9469 • www.beesgali.com

**Gold Works**
499 Campbell Ave., WH
932-0083
Gold-works.com
1 FREE Watch Battery Per Customer
FREE Ring Cleaning
FREE Jewelry Inspection
15% OFF Any Repairs Needed
This Offer Only Good Until April 13, 2002



Rotary Club of West Haven
14th Annual Auction

**Saturday, April 20, 2002**
6:30-11:00 p.m.
West Haven Italian-American Club
85 Chase Lane, West Haven
Cost Per Person - $30 (Open Bar)

6:30 p.m. Doors Open, Silent Auction Begins
7-8 p.m. Full Buffet Dinner is Served!
8-10:30 p.m. Live Auction

Past items have included: Travel packages; NASCAR Tickets; Dinner Out; Electronic and Garden Equipment; Car "Stuff"; Gift Baskets; Sporting Goods, etc Proceeds support many civic projects undertaken by the club.

For ticket information, contact Auction Chairman Alan Olenick, 933-4421 or Tom Torello, Ticket



United States District Court; S.D. New York.

UNITED STATES FOOTBALL LEAGUE, et al.,
Plaintiffs,
v.
NATIONAL FOOTBALL LEAGUE, et al.,
Defendants.

No. 84 CIV. 7484 (PKL).

May 16, 1986.

FINLEY, KUMBLE, WAGNER, HEINE, UNDERBERG MANLEY, MEYERSON & CASEY 425 Park Avenue New York, New York 10022, for plaintiffs.

SPENGLER CARLSON GUBAR BRODSKY & FRISCHLING 280 Park Avenue New York, New York 10017, for plaintiffs.

DAVIS POLK & WARDWELL 1 Chase Manhattan Plaza New York, New York 10005, for defendants.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM 919 Third Avenue New York, New York 10022, for defendants.

COVINGTON & BURLING 1201 Pennsylvania Avenue, N.W. Washington, D.C. 20044, for defendants.

OPINION #10

LEISURE, District Judge:

*1 The USFL has moved this Court for the admission into evidence of a newspaper article written by Paul Attner ('Attner') that appeared in the Washington Post on March 16, 1984. Plaintiffs are especially interested in having the following portion of the Attner article admitted into evidence:
> [S]ources believe the NFL has begun placing subtle, behind-the-scenes pressure on ABC, [the television network] which will televise the next NFL Super Bowl and carries Monday Night Football.
> 'Don't expect anyone to ever admit ABC is being pressured,' said a television source. 'There are all types of antitrust problems here. But there are ways to remind ABC that by keeping the USFL alive with future contracts, it's running up the price of future NFL contracts and may force the league to look even more to cable. You don't have to threaten to get your point across.'

The NFL has objected to the admission of the Attner article on the grounds that the statements contained therein are inadmissible hearsay. For the reasons stated herein, the USFL's motion is denied and the NFL's hearsay objection is sustained.

Discussion

At the outset, it should be noted that courts rarely allow newspaper articles into evidence to prove the truth of the statements contained therein. May v. Cooperman, 780 F.2d 240, 262 n.10 (3d Cir. 1985) (Becker, J., dissenting); see also id. at 252 n.9 (majority agreeing with dissent that the admissibility of certain newspaper reports was a matter of serious doubt). Indeed, it is not uncommon for a trial court to summarily reject newspaper articles as obvious hearsay. See Ziering v. New York City Dep't of Health, 621 F. Supp. 679, 681 n.4 (S.D.N.Y. 1985).

The USFL argues that the statements contained in the Attner article are being offered merely to demonstrate 'the environment confronting the USFL,' and thus should not be considered hearsay. It is obvious, however, that the statements at issue are 'being offered in evidence to prove the truth of the matter asserted,' Fed. R. Evid. 801(c), viz., that the NFL had begun placing 'subtle, behind-the-scenes pressure on ABC.' Thus, the Court is confronted with statements of belief by unknown declarants reiterated in a newspaper article. This is hearsay within hearsay, see Fed. R. Evid. 805, and must be evaluated accordingly.

A. Standard Exceptions to Hearsay

In support of its application, the USFL has invoked, inter alia, Fed. R. Evid. 804(b)(3), under which statements 'contrary to the declarant's pecuniary or proprietary interest' are not excluded by the hearsay rule if the declarant is unavailable as a witness.

Although plaintiffs' extensive efforts to locate Attner's 'sources' have been sufficient to establish

the declarants' unavailability under Fed. R. Evid. 804(a)(5), 1 the Court nonetheless must reject the USFL's attempt to graft the language of Rule 804(b)(3) upon the statements at issue. Plaintiffs' proof that Attner's sources were making statements adverse to their own interest consists of mere conjecture. For example, it may be true, as the USFL speculates, that the sources quoted were network employees who risked immediate dismissal by talking to Attner. But it may not be true. Statements cannot be excepted from the rule against hearsay on such tenuous grounds.

*2 More importantly, plaintiffs have made no attempt to prove that Attner's sources had firsthand knowledge of any pressure that the NFL placed on ABC. The requirement of firsthand knowledge, see Fed. R. Evid. 602, clearly applies to the statement against interest exception. See United States v. Lang, 589 F.2d 92, 98 (2d Cir. 1978); 4 Weinstein's Evidence ¶804(b)(3)[02] at 804-129-30 (1985). Although firsthand knowledge can be inferred from the circumstances surrounding a declaration, see Lang, 589 F.2d at 98 (citing Advisory Committee Note to Rule 803), a fair reading of the Attner article does not yield such an inference.

On its face, the Attner article reports statements of belief, not knowledge. This simple point vitiates the argument that the statements at issue qualify as exceptions to the hearsay rule under Rule 804(b)(3). A fortiori, plaintiffs' reliance on the 'state-of-mind' hearsay exception is also improper, since that exception by its terms does not apply to 'a statement of memory or belief to prove the fact remembered or believed.' Fed. R. Evid. 803(3).

B. Residual Hearsay Exceptions

In seeking the admission of the Attner article into evidence, plaintiffs have alternatively relied on Federal Rules of Evidence 803(24) and 804(b)(5). These residual hearsay exceptions apply to statements with 'circumstantial guarantees of trustworthiness' equivalent to the other exceptions enumerated in Rules 803 and 804. [FN2]

It is clear that Congress intended the residual exceptions to hearsay to be used "only rarely, in truly exceptional circumstances." In re Corrugated Container Antitrust Litigation, 756 F.2d 411, 415 (5th Cir. 1985) (citation omitted); see Robinson v. Shapiro, 646 F.2d 734, 742 (2d Cir. 1981). There is nothing 'truly exceptional,' however, about newspaper articles containing statements by unknown declarants. To the contrary, such articles appear frequently, are often challenged by interested parties as inaccurate, and could be the subject of wide-spread abuse if admitted into evidence under the residual hearsay exceptions in any but the most extraordinary circumstances. It is no small irony that USFL Commissioner Harry L. Usher stated in a pre-trial deposition in this case that 'perhaps more frequently than not, reporters don't quote you accurately,' Usher Deposition at 395-96 (quoted in NFL Attner Memo at 9), and that other USFL witnesses have given deposition testimony expressing their distrust of the press.

The Court intends no disrespect to a profession whose members work long hours under pressure of deadlines, and who are--to some extent--in the business of reporting rumor. Nonetheless, to paraphrase the comments of Judge Sofaer, 'the grave nature of the allegation against [the NFL] requires that [the USFL] be prevented from using inflammatory and improper hearsay, including . . . newspaper articles, to establish its claim.' Sharon v. Time, 83 Civ. 4660 (ADS) slip op. (S.D.N.Y. January 31, 1985). Judge Sofaer's remarks, it should be noted, go directly to the issue of whether 'the interests of justice will best be served by the admission of the statement into evidence.' Fed. R. Evid. 803(24); 804(b)(5). [FN3]

*3 Both residual hearsay exceptions require that the statement at issue 'be more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts.' Id. The point that the USFL is trying to establish through the Attner article is that the NFL placed 'subtle, behind-the-scenes' pressure on ABC. To prove that point, the USFL will offer into evidence, in addition to the Attner article: 1) a presentation given by a Harvard Business School professor to a group of NFL employees in which the professor directly suggested the use of pressure tactics against the networks as a means to 'conquer the USFL'; 2) testimony by Howard Cosell that he had been told by ABC's Roone Arledge that Arledge was 'under pressure' from the NFL; and 3) reluctant admissions by ABC's Jim Spence that the NFL owners had communicated their displeasure to ABC about the network's contract with the USFL.

Each of the three items just referred to are more probative of 'NFL pressure' than anything contained in the Attner article. Plaintiffs' own trial counsel, in his opening statement, referred to the Harvard Business School presentation as a 'smoking gun.' In short, it is apparent that the 'most probative' requirement of Federal Rules of Evidence 803(24) and 804(b)(5) has not been satisfied.

## CONCLUSION

The Attner article is excluded from trial as inadmissible hearsay, not subject to a hearsay exception under the Federal Rules of Evidence. Plaintiffs' motion to admit the Attner article into evidence is denied.

SO ORDERED

> FN1  Plaintiffs' extensive efforts to learn the identities of Attner's sources, efforts which have included litigation in another forum, are familiar to the parties and to the Court, and need not be discussed herein.

> FN2  In addition, in order to fall within either Rule 803(24) or 804(b)(5), the statement at issue must be 'offered as evidence of a material fact,' and 'be more probative on the point on which it is offered than any other evidence which the proponent can procure through reasonable efforts.' The two rules also require that the admission of the statement into evidence serve 'the general purposes of [the Federal Rules of Evidence] and the interests of justice,' and that admission be preceded by sufficient pre-trial notice to the adverse party.

> FN3  The Court's analysis is unchanged by the USFL's submission of an affidavit sworn to by Attner, attesting to the confidential nature of his sources and to the accuracy of the statements quoted. See USFL Attner Memo, Exhibit B. The affidavit provides the Court with no additional insight as to the trustworthiness of the declarants or their statements. Plaintiffs are seeking more than one billion dollars in damages in this treble damages lawsuit. If they are successful, justice requires that they not succeed via the implementation of phantom evidence.

1986 WL 5803, 1986 WL 5803 (S.D.N.Y.), 1986-1 Trade Cases P 67,101

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\* \* \* \* \* \* \* \* \* \* \* \* \*

THOMAS REILLY,          CIVIL ACTION NO. 302CV1346
     PLAINTIFF

VS.
                             JANUARY 15, 2004
CITY OF WEST HAVEN and
H. RICHARD BORER JR.
Individually and in his
Capacity as Mayor of West Haven,
     DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \*

DEPOSITION OF THOMAS REILLY

APPEARANCES:

   FOR THE PLAINTIFF:

      GARY PHELAN, LLC.
      433 South Main Street
      West Hartford, Connecticut 06110
        By:  TANYA WOLANIC, ATTORNEY

   FOR THE DEFENDANTS:

      SUSMAN, DUFFY & SEGALOFF
      55 Whitney Avenue
      New Haven, Connecticut 06507
        By:  JENNIFER L. SCHANCUPP, ATTORNEY

POST REPORTING SERVICE
HAMDEN, CT  (800) 262-4102

2

DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

1        . . .Deposition of THOMAS REILLY,
2   taken on behalf of the Defendants in the above-
3   entitled cause, wherein Thomas Reilly is Plaintiff
4   and City of West Haven, Et Al, are Defendants,
5   pending in the United States District Court,
6   District of Connecticut, pursuant to notice, before
7   Walter J. Krzepek, a Notary Public in and for the
8   State of Connecticut, County of New Haven, held on
9   January 15, 2004, at 10:25 o'clock A.M., at Susman,
10  Duffy & Segaloff, 55 Whitney Avenue, New Haven,
11  Connecticut, at which time the parties were
12  represented as hereinbefore set forth. . .
13
14
15
16                    STIPULATIONS
17
18           All objections, except as to form,
19  are reserved for the trial.
20           Reading and signing of the deposition
21  are not waived.
22           Formalities as to notice and proof of
23  the Notary Public are waived.
24

POST REPORTING SERVICE
HAMDEN, CT   (800) 262-4102

DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

3

1
2              THOMAS REILLY
3  Having been called as a witness, having been first
4  duly sworn, testified upon his oath as follows:
5
6           DIRECT EXAMINATION
7  BY MS. SCHANCUPP:
8      Q   Mr. Reilly, my name is Jennifer Schancupp
9  and I represent the City of West Haven and Mayor
10 Richard Borer in the lawsuit that you've brought
11 against them.
12             I'll be asking you a series of
13 questions this morning.
14             As you've noticed, there's a court
15 reporter present and he's making a written
16 transcription of this morning's proceedings.
17             This process is called a deposition.
18 Have you ever been to a deposition before?
19     A   Yes.
20     Q   Approximately how many?
21     A   One.
22     Q   When was that?
23     A   The late 70's.
24     Q   Let me just refresh some rules of the

DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

128

```
 1      Q    Do you know who writes it?
 2      A    No.
 3      Q    What's the name of the paper; the West
 4   Haven Voice is it?
 5      A    That's the Voice, yes, West Haven Voice.
 6   There's two weeklies.  That one is the Voice.
 7      Q    What is the other one?
 8      A    West Haven News.
 9      Q    Is it your understanding that the Dear
10   Felicia articles are opinion columns?
11      A    Yes.
12      Q    What are they?
13      A    I don't know.  They're hard to describe.
14   You have to read it.
15      Q    I've only read what I've seen in this
16   file.
17      A    I never talked to a newspaper person.  No
18   one ever asked me my opinion or thoughts or
19   whatever.
20      Q    Do you know Charles Moreno?
21      A    Chuck Moreno, yes, I do.
22      Q    How do you know him?
23      A    He was on the council prior and he's been
24   involved in politics.
```