UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| THOMAS REILLY, | \* | CIVIL ACTION NO. |
| PLAINTIFF | \* | 3:02CV1346 (SRU) |
| VS. | \* | |
| | \* | |
| CITY OF WEST HAVEN AND | \* | MARCH 15, 2005 |
| H. RICHARD BORER, JR., | \* | |
| DEFENDANTS | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' REPLY TO PLAINTIFF'S SUPPLEMENTAL LOCAL RULE 56(A)2 STATEMENT DATED FEBRUARY 22, 2005

Pursuant to the Court's order February 8, 2005, the Plaintiff filed a 56(a)2 Statement pursuant to the Local Rules citing evidence from the record to support his contentions. The citations to the record referenced in the Plaintiff's 56(a)2 Statement supplement the Plaintiff's prior "Local Rule 9(c) 1 Statement" dated July 1, 2004.

### THE SPARSE EVIDENCE CITED BY THE PLAINTIFF DOES NOT SUPPORT A FINDING OF MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 OR CONN. GEN. STAT. §31-51q.

In his memorandum of law in opposition to the Defendant's Motion for Summary Judgment, the Plaintiff raises for the first time a claim that the City Council of West Haven acquiesced to the Mayor's purportedly politically retaliatory recommendation to eliminate the position of Electrical Inspector from the City's budget for 2002-2003. [1] Although the Plaintiff's Complaint alleges that the Mayor acted improperly, *see Complaint ¶¶ 9-15,* it is silent as to any claim of wrongdoing by the City

---

[1]The Plaintiff has withdrawn his §1983 claims against Mayor Borer. Pl. Mem. p. 10. Thus, the City is the sole defendant to the Plaintiff's § 1983 claims.

Council. As evidenced by the Plaintiff's 56(a)2 Statement, the only claims which implicate the actions of City Council are set forth in Paragraphs 1, 4 and 5. The only evidence cited to support this alleged wrongdoing is the Plaintiff's Affidavit at ¶¶ 8-10; the Plaintiff's deposition testimony at pp. 78-79; the Plaintiff's 4/14/02 letter to City Council and an article which was published in the New Haven Register.[2]

An examination of this evidence reveals that it cannot support a finding of municipal liability. The alleged wrongdoing by City Council is premised on the claim that the Plaintiff spoke to two members of City Council concerning the Plaintiff's belief that the Mayor's recommendation to eliminate the position of Electrical Inspector was politically motivated and that one member of City Council informed Mr. Reilly that "she was getting a lot of 'flak' from other political parties if she supported Mr. Reilly's attempt to reinstate his position". *Plaintiff's 56(a)2 Statement, ¶ 5; Plaintiff's Affidavit ¶ 9.* Nothing more specific is referenced by the Plaintiff.[3] Thus, absent pure speculation as to what the nature of the "flak" was , there is simply no evidence to support a finding of improper motive by City Council.

Indeed, the Plaintiff cites to no affidavits or deposition testimony of the members of City Council to support his claim of the alleged wrongdoing of City Council. Moreover, even if it could be inferred (an inference not supported by the record) that the four members of City Council who voted against the reinstatement of the position of Electrical Inspector, *See Complaint, ¶ 16; Ex. 2 D. to Def's Memorandum in Support of Summary Judgment,* did so for improper reasons, that improper intent

---

[2]  The Plaintiff's citation to the New Haven Register article is the subject of the Defendants' pending Motion to Strike Materials Submitted in Opposition to the Motion for Summary Judgment.

[3]The Plaintiff's letter to City Council is silent as to any purportedly improper motive of the Mayor in recommending that the position of Electrical Inspector be eliminated from the City's budget. The New Haven Register article states simply that the "council did not restore other controversial cuts that Borer critics charged had political overtones. Those included jobs held by ... Electrical Inspector Thomas Reilly....."

2

cannot be imputed to the City, where the four members constitute a minority of the City Council and there are no allegations that the remaining members retaliated or intended to retaliate against the Plaintiff. "Municipal liability [cannot rest] on so frail a foundation." Gupta v. Brighton, 9 F. Supp. 2d 242, 245 (W.D.N.Y. 1998) (quoting Scott- Harris v.Fall River, 134 F. 3d 427, 440) (1st Cir. 1997)(holding that a municipality may not be held liable under § 1983 where the basis of the claim is that two of nine municipal board members voted to abolish the plaintiff's position in retaliation for protected speech), *rev'd on other grounds*, *sub nom* Bogan v. Scott-Harris, 523 U.S. 44, 118 S. Ct. 966, 140 L.Ed. 2d 79 (1998). Thus, that a motion to reinstate the Plaintiff's position was voted on by City Council and garnered 7 votes in favor, but failed to pass by the required two thirds majority vote, is fatal to the Plaintiff's claim of alleged wrongdoing by City Council. See Scott- Harris v.Fall River, *supra*; Gupta v. Brighton, *supra*.

### THE EVIDENCE DOES NOT SUPPORT A FINDING OF DENIAL OF DUE PROCESS BASED ON THE REMOVAL OF THE PLAINTIFF FROM THE HOLIDAY FESTIVITIES COMMITTEE.

The Plaintiff cites to pages 90 and 101-103 of his deposition transcript to support his claim that the Mayor removed him from the Holiday Festivities Committee in retaliation for the Plaintiff's candidacy for City Council on a ticket opposed to the Mayor. The Plaintiff concedes, however, that service on this committee was on a volunteer basis and at the pleasure of the Mayor. *Reilly Depo. pp. 10, 23-26,84-87,*Board of Regents v. Roth, 408 U.S. 564, 577, 92 *102, attached hereto as Exhibit 1.* Thus, the Plaintiff has no constitutionally protected property interest in membership on this committee. See Board of Regents v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972); Gagliardi v. Village of Pawling, 18 F. 3d 188, 192 (2d Cir. 1994).

In order to have a property interest in something "a person clearly must have more than abstract need or desire for it."    Board of Regents v. Roth, *supra*. Instead, the person must have an entitlement to the property interest. Gagliardi, *supra*. "An entitlement to a benefit arises only

3

'where the discretion of the issuing agency is so narrowly circumscribed' as to virtually assure

conferral of the benefit.  <u>Gupta</u>, *supra*, <u>quoting</u> <u>Gagliardi,</u> 18 F. 3d at 192.  Here, Plaintiff concedes

that it was within the Mayor's discretion to "change and reorganize those committees." Plaintiff's

Depo. p. 102.  Accordingly, the Plaintiff has failed to make out a claim that he was constitutionally

entitled to serve on the Holiday Festivities Committee.


                        THE DEFENDANTS,
                        CITY OF WEST HAVEN AND
                        H. RICHARD BORER, JR.

                        By: _____
                        Jennifer L. Schancupp
                        Federal Bar No. ct11876
                        Susman, Duffy & Segaloff, P.C.
                        55 Whitney Avenue
                        P.O. Box 1684
                        New Haven, CT 06507

### CERTIFICATION

        This is to certify that a copy of the foregoing was mailed this day, via first class mail,
postage prepaid, to the following:

<u>Counsel for the Plaintiff</u>
Gary Phelan, Esq.
Outten & Golden, LLP
Four Landmark Square, Suite 201
Stamford, CT 06901

<u>Co-counsel for the Defendants</u>
Michael P. Farrell, Esq.
201 Center Street
West Haven, CT 06516

                        _____
                        Jennifer L. Schancupp, Esq.

I:\Client W\West Haven\Reilly\pleadings\Reply to Plaintiff Supplemental 56a2 statement.wpd

4

1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


* * * * * * * * * * * * *

THOMAS REILLY,                    CIVIL ACTION NO. 302CV1346
                PLAINTIFF

        VS.
                                  JANUARY 15, 2004
CITY OF WEST HAVEN and
H. RICHARD BORER JR.
Individually and in his
Capacity as Mayor of West Haven,
                DEFENDANTS

* * * * * * * * * * * * *


DEPOSITION OF THOMAS REILLY


APPEARANCES:

    FOR THE PLAINTIFF:

        GARY PHELAN, LLC.
        433 South Main Street
        West Hartford, Connecticut 06110
            By:  TANYA WOLANIC, ATTORNEY


    FOR THE DEFENDANTS:

        SUSMAN, DUFFY & SEGALOFF
        55 Whitney Avenue
        New Haven, Connecticut 06507
            By:  JENNIFER L. SCHANCUPP, ATTORNEY


POST REPORTING SERVICE
HAMDEN, CT   (800) 262-4102

EXHIBIT 1

DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

1              . . .Deposition of THOMAS REILLY,

2        taken on behalf of the Defendants in the above-

3        entitled cause, wherein Thomas Reilly is Plaintiff

4        and City of West Haven, Et Al, are Defendants,

5        pending in the United States District Court,

6        District of Connecticut, pursuant to notice, before

7        Walter J. Krzepek, a Notary Public in and for the

8        State of Connecticut, County of New Haven, held on

9        January 15, 2004, at 10:25 o'clock A.M., at Susman,

10       Duffy & Segaloff, 55 Whitney Avenue, New Haven,

11       Connecticut, at which time the parties were

12       represented as hereinbefore set forth. . .

13

14

15

16                            STIPULATIONS

17

18              All objections, except as to form,

19       are reserved for the trial.

20              Reading and signing of the deposition

21       are not waived.

22              Formalities as to notice and proof of

23       the Notary Public are waived.

24

DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

1        Q     T-R-A-C-Y or C-E-Y?

2        A     C-Y.

3        Q     What did she tell you?

4        A     She informed me that the city was looking

5     for an electrical inspector.

6        Q     How do you know Mary Tracy?

7        A     Through my volunteer service for the City

8     of West Haven.

9        Q     Prior to 1995, what was your volunteer

10    service for the City of West Haven?

11       A     I was involved with the fireworks

12    committee, the holiday festivities committee,

13    council of the arts.

14       Q     What did you do, what was your volunteer

15    service?

16       A     Anything that needed to be done manually

17    in the construction trade, they would ask me to see

18    if I could get it done for them.

19       Q     Give me some examples?

20       A     Tree lighting; raising money for, you

21    know, setting tents; anything of that nature.

22       Q     Are you married?

23       A     Yes.

24       Q     Do you have children?

DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

1      Q    Who appointed you as Inland Wetlands

2   Commissioner?

3      A    Mayor Borer.

4      Q    I take it that appointment would need the

5   approval of city council?

6      A    No.

7      Q    No?  Okay.  So he just appoints you and

8   it's a done deal?

9      A    On that particular board.

10     Q    For the position of Commissioner of Inland

11  Wetlands?

12     A    Yes.

13     Q    One of the allegations that you make in

14  your complaint concerns the holiday festivities

15  committee for the City of West Haven.  What is that

16  committee?

17     A    The holiday festivities committee was a

18  take-off of the arts council and it was to provide

19  entertainment, relaxation, recreational events for

20  the citizens of West Haven.

21     Q    Such as?

22     A    Fireworks committee, Savin Rock Festival,

23  concerts on the green and anything else the mayor

24  would want done, he would contact us.

24

DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

1        Q    I believe you testified earlier that you

2    had done volunteer services for the City of West

3    Haven on a committee for the arts and holiday

4    festivities.

5                    So you're saying that the committee

6    for the arts grew into the holiday festivities

7    committee?

8        A    Shortly after the mayor took office.

9        Q    Mayor Borer?

10        A    Mayor Borer, he did away with the arts

11    council.

12        Q    And it became the functions of the arts

13    council?

14        A    Came under the auspicious of the holiday

15    festivities.

16        Q    Your involvement with the arts council,

17    when do you date that back to approximately?

18        A    Probably '93.

19        Q    The holiday festivities committee, how are

20    the members of that committee selected?

21        A    I gave the mayor a list of people.

22        Q    You did?

23        A    (Nodding in the affirmative.)

24        Q    When was that?

DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

1       A    Probably in '95, '94, '95.

2       Q    I don't want to put words in your mouth

3   but was that about the time that the arts council

4   functions were taken over by the holiday festivities

5   committee?

6       A    It's kind of complicated.  People work as

7   volunteers, did it without any appointments, they

8   were just a volunteer group but for the amount of

9   work that was being done the mayor wanted it a

10  little more organized and he named the committee so

11  that it would fall underneath the city's insurance

12  and protection.

13      Q    And he then came to you and asked you for

14  names or you went to him?  How did that come about?

15      A    I don't recall.  I do recall him asking

16  for a list of people that were on the committee so

17  he could appoint them.

18      Q    When you say a list of people that were on

19  the committee, is that the people that had been

20  active in the arts council?

21      A    Anyone that was left over from the arts

22  council and from the new younger people had joined

23  and he appointed them.

24      Q    Serving on the holiday festivities

DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

1    committee, was that all volunteer?

2         A    The people on the committee were

3    volunteers.

4         Q    Was there any support from paid staff of

5    the City of West Haven?

6         A    Yes.

7         Q    Who supported it?

8         A    Human Resources and Public Works.

9         Q    I'm sorry?

10         A    Human Resources and Public Works.

11         Q    So when something needed to be done,

12    describe for me how it would get done, like you say,

13    the fireworks for example?

14         A    The fireworks was pretty much independent

15    of it.  It was not -- I'm sorry, it was not part of

16    the holiday festivities committee.  That was an

17    independent volunteer group.

18         Q    What was part of the holiday festivities

19    committee?

20         A    Okay.  The Savin Rock Festival, the tree

21    lighting, the Easter egg hunt, the haunted hayrides.

22    Those are some of the things that were.

23         Q    So if something needs to get done for the

24    Savin Rock Festival, how does the Department of

84
DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

1    sign off on the application?

2         A    I could not sign off on it.

3         Q    The final sign off would be done by either

4    the ABO or the BO?

5         A    Correct.

6         Q    You mention in this letter that you were

7    in the process of taking classes in order to become

8    or I guess taking classes in the fall, being the

9    fall of 2002, in order to become certified as an

10   assistant building official.

11              What led you to pursue the license of

12   an ABO?

13        A    Myself.  I believe that you have to

14   continue your education and should prove yourself.

15              Once the mayor removed me from the

16   duties of the fireworks and the Savin Rock Festival

17   and Community Affairs Office, I had more time on my

18   hands.

19              I went to Mr. Gladwin and explained

20   that to him and he was delighted that I was going to

21   continue my education.

22        Q    When you say the mayor removed you from

23   the fireworks, Savin Rock Festival and holiday

24   festivities, when did that happen?

85
DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

1      A      I think, I'm not sure, I would say maybe

2      in February.  I'm not sure.

3      Q      How were you removed?

4      A      The first letter or first letter of

5      notification I got came from his secretary, Barbara

6      Doyle.

7      Q      Was that a written notification?

8      A      Yes.

9      Q      So you received written notification from

10     Barbara Doyle telling you you were no longer a

11     member of the holiday festivities committee?

12     A      Not in so many words.

13            The memo came down from Barbara Doyle

14     that the mayor felt a need to reorganize the holiday

15     festivities committee and then gave us a chain of

16     command and I was not on that.

17            May I continue?

18     Q      Sure.

19     A      It wasn't actually a chain of command.  It

20     was a list of committees and members of the

21     committees.

22            I was not listed on the committees.

23            (Whereupon, a letter from Barbara

24     Doyle to all committee members was identified as

DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

1    Defendant's Exhibit No. 16 for Identification.)

2    BY MS. SCHANCUPP:

3        Q    Let me show you a document that I marked

4    as Defendant's 16 and it's actually, well, three

5    separate documents but you can take a look at it and

6    identify it for me if you would, after having had a

7    chance to review it.

8                Have you had an opportunity to review

9    it?

10       A    Yes.

11       Q    Can you identify that for me?

12       A    Yes.  This is a copy of a letter from

13   Barbara Doyle to all committee members and it

14   explains what the mayor had decided, to establish a

15   new holiday festivities committee and it lists all

16   the members.

17       Q    Is that the letter that you referred to

18   earlier?

19       A    Yes.

20       Q    And the next two pages of that document

21   that I've marked as -- is it 16?

22       A    This is 16, yes.

23       Q    Can you identify those?

24       A    The documents list holiday festivities

DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

1    committees, the members and the chairs.

2        Q    Correct me if I'm wrong but on those two

3    documents, the letter of January 18, 2002, and then

4    the listing of the members of the holiday

5    festivities committee, is there not a name of Thom

6    Reilly?

7        A    There is.

8        Q    Is that you?

9        A    That is me.

10        Q    And the final page of that document, that

11    I marked as 16, what is that or can you identify

12    that?

13        A    Yes.  It's a committee list, holiday

14    festivities committee list and a list of the

15    committee.

16        Q    You testified earlier that you were

17    removed because your name didn't show up on a

18    listing of the committee.

19              I don't want to put words in your

20    mouth.

21        A    Absolutely.  On the last one I am not

22    listed.  I was never contacted, never notified of

23    any committee meetings; nothing was ever scheduled

24    for me.

DEPOSITION OF THOMAS REILLY
JANUARY 15, 2004

1      A    That the mayor had reorganized and I am no

2    longer the liaison officer.

3      Q    Was that something that he said to you,

4    you said to him?

5      A    Who are you speaking to?

6      Q    Bob Seneca.

7      A    Bob Seneca?

8      Q    Yes.

9      A    I probably said to him.

10      Q    Did he agree, disagree, make any comment?

11      A    He disagreed.

12      Q    What did he say?

13      A    He dropped off the committee.

14      Q    And Cheryl Treat, what were your

15    conversations with her?

16      A    Pretty much the same.  Just to give some -

17    - short circuit it, just about all my conversations

18    with everybody there, those people were members of

19    one of the committees, either the Savin Rock

20    Festival, fireworks or holiday festivities.

21           I notified them all that I was no

22    longer the liaison person.  I was not the person to

23    see if the mayor saw fit to change and reorganize

24    those committees.